# 25-1756

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

IN RE: OPENAI, INC. COPYRIGHT INFRINGEMENT LITIGATION

---

On Appeal from the United States District Court
For the Southern District of New York
(Nos. 1:24-cv-01514; 1:25-md-03143)
(Hons. Colleen McMahon and Sidney H. Stein)

---

**BRIEF FOR PLAINTIFFS-APPELLANTS
RAW STORY MEDIA, INC. AND ALTERNET MEDIA, INC.**

---

Stephen Stich Match
  *Counsel of Record*
Matthew Topic
LOEVY + LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
match@loevy.com

*Counsel for Plaintiffs-Appellants*

September 5, 2025

## CORPORATE DISCLOSURE STATEMENT

Neither appellant, Raw Story Media, Inc. or AlterNet Media, Inc., has a parent corporation.  No publicly held corporation owns 10 percent or more of either's stock.

Dated: September 5, 2025          */s/ Stephen Stich Match*
                                  Stephen Stich Match
                                  *Counsel for Plaintiffs-Appellants*

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT......................................... ii

TABLE OF CONTENTS .................................................................... iii

TABLE OF AUTHORITIES ................................................................v

I.   JURISDICTIONAL STATEMENT...............................................1

II.  INTRODUCTION ........................................................................1

III. STATEMENT OF THE ISSUES ..................................................3

IV.  STATEMENT OF THE CASE......................................................3

A. Factual background ..............................................................4

1. Appellants publish news articles online with CMI.................4

2. OpenAI scrapes Appellants' articles from the internet to train
   its large language models ....................................................5

3. OpenAI intentionally removes Appellants' CMI by making
   *prima facie* infringing copies..............................................6

4. Removing Appellants' CMI conceals and abets infringement
   and saves OpenAI training expenses .....................................8

B. Procedural History ...............................................................12

1. The district court dismisses the complaint............................12

2. The district court denies leave to amend and refuses
   jurisdictional discovery.......................................................13

3. The district court denies reconsideration...............................16

V.   SUMMARY OF ARGUMENT....................................................17

VI.  STANDARD OF REVIEW ........................................................21

VII. ARGUMENT................................................................................22

**A. Appellants have standing to bring a CMI removal claim**.......................**22**

    **1. At a categorical level, OpenAI's CMI removal concretely harmed Appellants by causing property-based injuries closely related to copyright infringement** ...........................**23**

    **2. OpenAI's particular manner of CMI removal harmed Appellants by infringing their copyright** ................**30**

    **3. OpenAI's unjust enrichment also confers standing** ...........................**32**

    **4. The district court wrongly imposed a dissemination requirement for standing** ..............................**37**

    **5. Were dissemination required, the district court should have allowed jurisdictional discovery** .....................**39**

**B. Appellants stated a claim** .............................................**42**

    **1. Appellants were "injured" under the DMCA**.....................**44**

    **2. Appellants plausibly alleged *scienter*** ..................................**45**

**VIII. CONCLUSION** ..................................................**50**

**CERTIFICATE OF COMPLIANCE** ................................**51**

**CERTIFICATE OF SERVICE** ........................................**51**

# <u>TABLE OF AUTHORITIES</u>

*Page*

## *Cases*

*Aaberg v. Francesca's Collections*, Inc., No. 17-cv-115, 2018 WL 1583037
(S.D.N.Y. Mar. 27, 2018) ........................................................................46

*Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994) .....................38

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ...............21

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003) .........................................................39

*Ayyash v. Bank Al-Madina*, No. 04-cv-9201, 2006 WL 587342
(S.D.N.Y. Mar. 9, 2006) ..........................................................................40

*Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024) .............25, 29

*Cantor v. Perelman*, 414 F.3d 430 (3d Cir. 2005) ....................................................35

*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ..............................................28

*CoxCom, Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008) ...........................................45

*Devocean Jewelry LLC v. Assoc. Newspapers Ltd.*, No. 16-cv-2150,
2016 WL 6135662 (S.D.N.Y. Oct. 19, 2016) ..........................................46

*Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170
(2d Cir. 2012) ...........................................................................................35

*Fox Film Corp. v. Doyal*, 286 U.S. 123 (1932) ........................................................27

*F.W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228 (1952) ..................................24

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007) ................................4

*Grace v. Apple, Inc.*, 328 F.R.D. 320 (N.D. Cal. 2018) ...........................................27

*Grynberg v. Total S.A.*, 538 F.3d 1336 (10th Cir. 2008) .........................................35

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ...............23

*Hirsch v. CBS Broad. Inc.*, No. 17-cv-1860, 2017 WL 3393845
(S.D.N.Y. Aug. 4, 2017) .......................................................................................46

*Hunter v. McMahon*, 75 F.4th 62 (2d Cir. 2023).........................................20, 21, 43

*In re OpenAI, Inc., Copyright Infringement Litig.*, No. 24-cv-01514,
2025 WL 1707564 (S.D.N.Y. June 18, 2025) ......................................................3, 16

*Inv. Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705 (2d Cir. 1972) ............................40

*Jewell-La Salle Realty Co. v. Buck*, 283 U.S. 202 (1931) ......................................24

*Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2025 WL 744032
(N.D. Cal. Mar. 7, 2025) ...................................................................................18, 26

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020)..............................25, 29, 45

*Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) ......46

*Microbot Medical, Inc. v. Mona*, No. 24-559, 2025 WL 262590
(2d Cir. Jan. 22, 2025).........................................................................................35

*Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219 (S.D.N.Y. 2013)..............40

*Moreira v. Société Générale, S.A.*, 125 F.4th 371 (2d Cir. 2025) ..............19, 32, 36

*N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283
(S.D.N.Y. 2025) ........................................................... 16, 18, 20, 26, 45, 46, 47, 48

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007 (9th Cir. 1994)..............33

*Oliver Sch., Inc. v. Foley*, 930 F.2d 248 (2d Cir. 1991) .........................................43

*Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*,
105 F.4th 46 (2d Cir. 2024) ........................................................................19, 34, 35

*Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529 (2d Cir. 1999) ........................21, 46

*Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1 (S.D.N.Y. 2024) ...........3

*Saba Capital Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103 (2d Cir. 2023) ...............................................................28

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ....................................................... 18, 22, 25, 29, 36, 37

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ......................................27

*Sammons v. Colonial Press*, 126 F.2d 341 (1st Cir. 1942) .....................................32

*Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162 (9th Cir. 2012) ...........36

*Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529 (2d Cir. 2020) ............21

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ..........23, 24

*Spokeo v. Robins*, 578 U.S. 330 (2016) .................................................13

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792 (2d Cir. 2023) ........................................................34

*The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18 (S.D.N.Y. 2025) ............................................... 16, 18, 20, 25, 29, 38, 48

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............ 13, 17, 22, 23, 26, 31, 37

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) .....................44

**Statutes**

15 U.S.C. § 1681e(b) .............................................................31

17 U.S.C. § 106 ...................................................................8

17 U.S.C. § 1202(b) ............................................................25, 44

17 U.S.C. § 1202(b)(1) ..............................................................11, 12, 21, 45

17 U.S.C. § 1202(c) .................................................................................12

17 U.S.C. § 1202(c)(1) .............................................................................26

17 U.S.C. § 1203(c)(1) .............................................................................32

17 U.S.C. § 411(a) ....................................................................................8

17 U.S.C. § 504(a) ..................................................................................26

17 U.S.C. § 504(c)(1) ...............................................................................24

22 U.S.C. § 6081(11) ...............................................................................37

Copyright Act of 1790, Acts of May 31, 1790 ..............................23, 24

Pub. L. 105-304, § 1203, 112 Stat. .........................................................44

### *Other Authorities*

37 C.F.R. § 202.4(m) .................................................................................8

Group Registration of Updates to a News Website, 89 Fed. Reg. 58,891
(July 22, 2024) ..........................................................................................8

Letter from Edward A. Bayley et al to Magistrate Judge Ona T. Wang, *In re
OpenAI, Inc. Copyright Infringement Litigation*, 25-md-03143
(S.D.N.Y. Aug. 4, 2025) .....................................................................39, 41

Letter from Tom Rubin, Chief of Intellectual Property and Content, OpenAI
to Suzanne V. Wilson, General Counsel and Associate Register of
Copyrights, United States Copyright Office (June 4, 2024),
https://www.copyright.gov/policy/artificial-intelligence/ex-parte-
communications/letters/OpenAI-June-4-2024.pdf .....................................9

OpenAI Website, Terms of Use (Dec. 11, 2024),
https://openai.com/policies/terms-of-use .................................................5

Restatement (Second) of Torts (1965)....................................................................27

Restatement (Third) of Restitution and Unjust Enrichment (2011) .................33, 36

S. Rep. 105-190 (1998)....................................................................................44

U.S. Const. art. I § 8 cl. 8...............................................................................23

## I.      JURISDICTIONAL STATEMENT

Appellants brought a complaint alleging violations of 17 U.S.C. § 1202(b)(1). The district court had federal question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered an order dismissing the complaint without prejudice on November 7, 2024. J.A.90. It denied Appellants' motion for leave to amend their complaint on April 3, 2025. J.A.186. Appellants timely moved for relief from judgment under Fed. R. Civ. P. 60(b)(6) on April 18, 2025. J.A.192. The district court denied that motion on June 18, 2025. J.A.199. These orders collectively disposed of all the parties' claims. Appellants timely appealed on July 16, 2025. J.A.200.

## II.      INTRODUCTION

OpenAI is a $500 billion technology company whose artificial intelligence products were built by mass-scraping online copyrighted content created by humans. In its sprint to gain market dominance at all costs in the emerging AI industry, and with trillions of dollars of potential capital investment on the line, OpenAI took and used that unlicensed content without permission or compensation, and without regard to its copyright obligations. Those AI products now compete, unfairly, with the human-created content to which they owe their very existence. In the coming years, this Court will be called upon to resolve a number of legal disputes between

- 1 -

human creators and AI companies like OpenAI, with tremendous implications for copyright law and for society. This is the first.

This appeal asks what is required for digital publishers to have standing to pursue violations of the Digital Millenium Copyright Act for an AI company's intentional removal of copyright management information knowing, or having reason to know, that it would conceal or abet a likely infringement. This Court has held that the DMCA provides broad protections in the digital era. But the court below, unlike the three other district courts that have addressed this issue, held that under the Supreme Court's *TransUnion* decision, digital publishers lack standing unless they can prove that the altered works were also disseminated to the public.

The district court's decision was based on an unduly wooden interpretation of *TransUnion* that conflicts with the Supreme Court's holding that a plaintiff in a statutory violation case like this need only show that the injury alleged is closely related to one that has been historically recognized. Because OpenAI's DMCA violations for removal of copyright management information closely relate to copyright infringement both at a *per se* level and as a result of the specific way OpenAI went about it, and because those violations also closely relate to unjust enrichment—none of which requires the dissemination the district court required— this Court should reverse and permit digital publishers their day in court, just as all three of the other district courts to address the issue have done on similar pleadings.

### III.     STATEMENT OF THE ISSUES

1.      Whether Appellants alleged a harm with a close relationship to a historical injury sufficient to confer Article III standing.

2.      If not, whether Appellants were entitled to jurisdictional discovery into OpenAI's dissemination of their articles.

### IV.     STATEMENT OF THE CASE

Appellants are news organizations that sued OpenAI for unlawfully removing their copyright management information ("CMI") in violation of 17 U.S.C. § 1202(b)(1).  J.A.74.  The district court (Hon. Collen McMahon, J.) dismissed their complaint on standing grounds without prejudice on November 7, 2024.  J.A.90; *Raw Story Media, Inc. v. OpenAI, Inc*., 756 F. Supp. 3d 1 (S.D.N.Y. 2024).  On November 21, 2024, Appellants moved for leave to amend or, in the alternative, to continue taking jurisdictional discovery.  J.A.100.  Judge McMahon denied that motion on April 3, 2025.  J.A.186.[1]  Appellants moved for relief from judgment on April 18, 2025, after the case had been transferred pursuant to an order by the Judicial Panel on Multidistrict Litigation.  J.A.190; J.A.192.  The transferee court (Hon. Sidney Stein, J.) denied that motion on June 18, 2025.  J.A.199; *In re OpenAI,*

---

[1] This order is not reported in the Federal Supplement and does not appear to be on Westlaw.

*Inc., Copyright Infringement Litig.*, No. 24-cv-01514, 2025 WL 1707564 (S.D.N.Y. June 18, 2025). Appellants appealed on July 16, 2025. J.A.200.

### A. Factual background.

#### 1. Appellants publish news articles online with CMI.

Appellants Raw Story Media, Inc. and AlterNet Media, Inc. are award-winning news organizations. J.A.103-04.[2] They own unregistered copyrights in tens of thousands of articles published on their websites. J.A.106.[3] Reporting those stories takes a significant investment of time and resources and sometimes involves great personal risk. J.A.104.

To protect the integrity of their copyright-protected property, Appellants convey their news articles with author, title, and copyright notice information. J.A.106. All are forms of copyright management information, or "CMI." *See* 17 U.S.C. § 1202(c) (defining CMI).

---

[2] Appellants draw this background from their Proposed First Amended Complaint. Though the district court denied amendment, it did so because it concluded that the proposed amendments were futile. Because this Court reviews that decision *de novo*, the Proposed First Amended Complaint contains the relevant factual allegations. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594-95 (2d Cir. 2007) (citing proposed amended pleading in this circumstance). And because the appeal arises from a decision on a motion to dismiss, "this Court must accept as true all allegations in the complaint and draw all reasonable inferences" in Appellants' favor. *Id*. at 591.
[3] The articles are listed in Exhibits 1 and 2 to the Proposed First Amended Complaint. *See* Proposed First Amended Complaint Exs. 8-9, *Raw Story v. OpenAI*, No. 24-cv-01514 (S.D.N.Y. Nov. 11, 2024), ECF Nos. 119-2 through 119-10. Due to their volume, the exhibits are not reproduced in the Joint Appendix

> **2. OpenAI scrapes Appellants' articles from the internet to train its large language models.**

OpenAI owns the lucrative artificial intelligence chatbot, ChatGPT. J.A.103. ChatGPT is powered by a large language model, or LLM. J.A.107. OpenAI's LLMs are numbered versions in the "GPT" series. *Id.* GPT was the first model, then GPT-2, and so on.

OpenAI's large language models—and thus ChatGPT, which they power—take text prompts from users as inputs and emit outputs designed to predict what expression an ordinary English user would write in response. J.A.107. The models can make those predictions only because they were trained on expressive works written by humans. *Id.*[4]

OpenAI obtained content for its training sets in two main ways. In both, it generally took creators' works without asking permission or offering compensation.

---

[4] While the fact-expression doctrine in copyright law is not at issue in this appeal, Appellants note, as background, that OpenAI intends for ChatGPT outputs to be expressive, not factual. *See* OpenAI Website, Terms of Use (Dec. 11, 2024), https://openai.com/policies/terms-of-use/ ("Output may not always be accurate. You should not rely on Output from our Services as a sole source of truth or factual information, or as a substitute for professional advice. . . . . Our Services may provide incomplete, incorrect, or offensive Output that does not represent OpenAI's views."); Defendant OpenAI, L.L.C.'s Reply Brief in Support of Motion for Summary Judgment at 4, *Walters v. OpenAI*, No. 23-A-04860-2 (Ga. Sup. Ct. Apr. 7, 2025) (arguing in defamation case that no reasonable user of ChatGPT could treat outputs as "actual facts").

*First*, OpenAI scraped creators' works directly from the creators' websites. OpenAI chose those websites by finding outbound links on the website Reddit with at least three "karma," an indicator of high quality. J.A.107-08. It then navigated to those links and downloaded the articles. J.A.108. These scraped articles formed at least two training sets, called WebText and WebText2. *Id.*

*Second*, OpenAI also obtained creators' works from a research institute called Common Crawl. J.A.107; J.A.112. Common Crawl itself had scraped much of the internet in a way that preserved creators' CMI. J.A.112.

OpenAI's training sets include Appellants' articles. OpenAI publicly admitted as much with respect to the WebText training set. J.A.108. Appellants confirmed this through discovery conducted before the district court's dismissal order: they found tens of thousands of copies of their articles, which Appellants identified in their proposed amended pleading. J.A.113.[5]

### 3. OpenAI intentionally removes Appellants' CMI by making *prima facie* infringing copies.

Before OpenAI used Appellants' articles to train its models, OpenAI took various steps to process them—again, without permission. Those steps included

---

[5] These articles are listed in Exhibits 8 and 9 to the Proposed First Amended Complaint. *See* Proposed First Amended Complaint Exs. 8-9, *Raw Story v. OpenAI*, No. 24-cv-01514 (S.D.N.Y. Nov. 11, 2024), ECF Nos. 119-16 through 119-20. Due to their volume, the exhibits are not reproduced in the Joint Appendix.

removing Appellants' CMI. To do so, OpenAI employed "text extractor" algorithms: computer programs that separate text from unwanted data. J.A.109.

OpenAI's text extractors are expressly designed to remove CMI. For example, OpenAI used a publicly available text extractor called "Dragnet," which its developer describes as designed to "separate the main article content" from other parts of the website, including "copyright notices." J.A.109. By design, Dragnet also omits author and title information. *Id*.

The text extractors worked as intended. After OpenAI produced in discovery copies of Appellants' articles as they appeared in the training sets, Appellants examined a sample. In that examined sample, none contained the author, title, or copyright notice with which the originals had been conveyed, and the text of the copies were otherwise identical to the originals apart from trivial formatting differences. J.A.113. So ChatGPT lacked access to the data indicating who wrote the articles or the fact that they were copyright-protected.

OpenAI's use of text extractors, moreover, *prima facie* infringed Appellants' copyright. By using the text extractors, OpenAI did not simply delete CMI from an initial copy of an article. It made a new copy of the article—a copy that lacks CMI— while retaining the initial copy for future use. J.A.109-10. Appellants did not grant OpenAI a license to make these additional copies. J.A.113. So in the course of

removing Appellants' CMI, OpenAI also infringed their copyrights.  *See* 17 U.S.C. § 106.[6]

### 4. Removing Appellants' CMI conceals and abets infringement and saves OpenAI training expenses.

Removing Appellants' CMI also had foreseeable effects on both the outputs ChatGPT would emit to its users and users' perceptions and behaviors.  These effects depend on the phenomenon of "regurgitation": when a large language model emits verbatim (or near-verbatim) parts of works on which it was trained.  J.A.114-15.  Regurgitations of copyright-protected works will often infringe where, as here, they are not authorized by the creator.  Indeed, after news organizations started suing it for Copyright Act violations—which was well after it had launched ChatGPT— OpenAI programmed ChatGPT to recognize that regurgitations infringe.  In response to a prompt by Appellants, which sought to elicit the regurgitation of the

---

[6] Though Appellants contend their copyrights have been infringed, they did not also bring infringement claims under 17 U.S.C. § 106 because their works are not registered with the Copyright Office; registration is a prerequisite for a "civil action for infringement of the copyright in any United States work," but not for claims under the DMCA.  17 U.S.C. § 411(a).  Appellants did not register their works because, at the time they filed suit, registering online-only works was not commercially feasible.  J.A.102.  Unlike for print works, the Copyright Office did not, at the time, have a mechanism for online news publishers to register their articles in groups for a single filing fee.  Recognizing the "challenges" this presented for online news organizations, the Copyright Office has since created a group registration mechanism for their works.  Group Registration of Updates to a News Website, 89 Fed. Reg. 58,891 (July 22, 2024); *see also* 37 C.F.R. § 202.4(m).  In essence, therefore, copyright law has long required digital publishers to rely heavily on the protections provided by CMI and the DMCA.

end of a news article, ChatGPT refused to produce it, saying, "I'm sorry, but I can't generate the original ending for the article or any copyrighted content." J.A.115.[7] LLM regurgitation has been a foreseeable phenomenon at all times relevant to this case, including when OpenAI removed Appellants' CMI, and OpenAI knew about it. J.A.103; J.A.115.[8]

Because OpenAI's models were not trained on Appellants' CMI—which OpenAI had removed prior to training—ChatGPT will not, because it cannot, include that CMI when regurgitating one of Appellants' works. And a regurgitation without Appellants' CMI would plainly conceal from the ChatGPT user that the response is an infringing regurgitation. J.A.118-19.

For similar reasons, CMI removal would also conceal that the regurgitation resulted from an infringing copy in OpenAI's training set: including CMI would

---

[7] After Appellants filed this lawsuit, OpenAI admitted the same publicly. *See* Letter from Tom Rubin, Chief of Intellectual Property and Content, OpenAI to Suzanne V. Wilson, General Counsel and Associate Register of Copyrights, United States Copyright Office at 2-3 (June 4, 2024), https://www.copyright.gov/policy/artificial-intelligence/ex-parte-communications/letters/OpenAI-June-4-2024.pdf (admitting that "displaying long excerpts from a work in response to a user query" "would exceed fair use").

[8] The failed regurgitation just referenced is not a counterexample. Appellants tried to elicit it after it had been cited in a complaint against OpenAI brought by a different news organization. That complaint apparently caused OpenAI to suppress regurgitations by that news organization, presumably due to the lawsuit. *See* J.A.115. The other news organization's ability to elicit the regurgitation is a better indication of ChatGPT's propensities before Appellants sued, which is the time relevant to this case.

signal that the training set copy (*i.e.*, the copy from which the output was derived) is infringing, while omitting it would conceal that fact. OpenAI knew these copies were infringing, since it obtained licenses to use other news organizations' articles to train its models, and created tools in 2023 which (it claimed) allow creators to block OpenAI from incorporating the creators' works into its training sets—none of which would have been necessary if OpenAI had free reign. J.A.118-19.

In addition to concealing OpenAI's output- and training-based infringement, CMI removal would abet infringement by ChatGPT users. A user with no reason to believe an output is infringing will have no compunctions about copying the output and distributing those copies to a future audience—a purpose for which OpenAI actively promotes ChatGPT. J.A.120. But if users knew the output was an infringing copy of Appellants' news article—which they would know were the regurgitation conveyed with its original CMI—then they would be less likely to copy and distribute it further, either because they fear copyright infringement liability or simply because they respect intellectual property. *Id*. Infringement by users should come as no surprise to OpenAI, which has committed to defending and indemnifying some of them against copyright infringement claims stemming from their use of its products. J.A.120-21.

OpenAI could have done more to prevent infringing regurgitations before releasing its models. And if it was going to release a ChatGPT capable of such

regurgitations, it could have designed ChatGPT to include CMI, which would have exposed its infringing conduct, helped news organizations enforce their rights, and dissuaded users from creating or distributing further infringing copies. Concealing or abetting infringement may well have a reason for removing CMI, or at least a welcome consequence.[9] But another explanation presents itself: it saved OpenAI money.

CMI is inconvenient for training a large language model. Humans ordinarily express themselves in sentences, not the sentence fragments often found in news headlines, bylines, and copyright notices, and symbols like "©." J.A.121. Given the prevalence of CMI on the internet, had OpenAI trained its models on CMI, the models would have followed suit, which was not OpenAI's objective. *Id.*

OpenAI could have included CMI in the training data and solved that issue on the back end by retraining the model to avoid these perceived linguistic infelicities. J.A.121. The result would have been a ChatGPT that both writes like a human and has the information (*i.e.*, CMI) necessary to tell users when one of its outputs is an infringing regurgitation. *Id.* But it costs money to train a model to do this. *Id.* And it costs **more** money than it does to remove CMI at the front end. *Id.* So OpenAI

---

[9] Purpose is not an element of a CMI removal claim. The statute requires that the defendant remove CMI intentionally and with actual or constructive that doing will abet or conceal an infringement, not that the defendant remove the CMI for any particular purpose. *See* 17 U.S.C. § 1202(b)(1). But OpenAI's purpose is part of the story.

- 11 -

decided just to strip the CMI on the front end to save those costs, precluding ChatGPT from being exposed to the CMI. *Id.* And because ChatGPT was not trained on the CMI, it could not emit the CMI, thus enabling OpenAI to take credit for copyright-protected expression written by humans.

### B. Procedural History

#### 1. The district court dismisses the complaint.

On February 28, 2024, Appellants sued OpenAI for unlawfully removing their copyright management information in violation of 17 U.S.C. § 1202(b)(1). J.A.74. That statute makes it unlawful to intentionally remove copyright management information conveyed in connection with a copyright-protected work knowing, or having reasonable grounds to know, that doing so will "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1). "Copyright management information" includes the title, author, and copyright notice information that Appellants conveyed in connection with their works. 17 U.S.C. § 1202(c).

Four days after the district court's Rule 16 conference, Appellants served requests for production of chat responses that regurgitated their works or any portion thereof. J.A.117. OpenAI agreed to produce responsive documents. *Id.*

In the meantime, OpenAI moved to dismiss for lack of standing and failure to state a claim. Before OpenAI had produced the requested chat responses, the district court (Hon. Colleen McMahon, J.) dismissed the complaint on standing grounds,

holding that Appellants' complaint did not assert a concrete Article III injury. *See* J.A.94-98. Appellants had argued that, under the Supreme Court's *TransUnion* decision, a concrete injury is by definition one with a "close historical or common-law analogue" or "close relationship" to a historical or common-law harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). And they argued that, as a *per se* matter, the harm from CMI removal has a close relationship to the historical injury of copyright infringement.

The district court rejected Appellants' analogy because it is possible for defendant to infringe a plaintiff's copyright without removing the plaintiff's CMI. *See* J.A.95 ("Defendants may, absent permission, reproduce or even create derivatives of Plaintiffs' works—***without incurring liability under Section 1202***—as long as Defendants keep Plaintiffs' CMI intact."). According to the court, standing for a CMI removal injury requires that the defendant disseminate a CMI-less copy, which Appellants had not alleged. *See* J.A.96 ("Moreover, I am not convinced that the mere removal of identifying information from a copyrighted work—absent dissemination—has ***any*** historical or common-law analogue.").

### 2. The district court denies leave to amend and refuses jurisdictional discovery.

Appellants moved for leave to amend and attached a proposed amended complaint. J.A.90; J.A.103; J.A.102-25. The proposed pleading included

significantly more detail on OpenAI's web scraping, CMI removal, and training practices, all of which are discussed above. *See* Sections IV.A.2-4, *supra*.

Appellants raised two arguments for standing supported by their new allegations. First, they argued that CMI removal is closely related to copyright infringement when the defendant removes CMI by creating *prima facie* infringing copies—which OpenAI had done according to Appellants' new allegations. This theory differed from the *per se* theory of their first complaint, which the district court had rejected. Second, Appellants argued that OpenAI inflicted an injury closely related to the historical claim for unjust enrichment by saving training costs through unlawful CMI removal.

Neither standing theory, if accepted, would obligate Appellants to allege specific disseminations of their articles, since neither copyright infringement nor unjust enrichment has any such requirement. But Appellants also argued that, should the court maintain its "harm requires dissemination" holding, it should at least let Appellants complete discovery into ChatGPT's output logs to identify instances where their works had been disseminated. Jurisdictional discovery was justified, Appellants argued, because OpenAI solely possesses ChatGPT's conversations with its users, because some of those conversations likely contained regurgitations of Appellants' works, and because OpenAI had recently suppressed regurgitations of works owned by other news organizations that sued it—the latter suggesting that

- 14 -

regurgitation occurred before the lawsuits. They also argued that the proposed pleading stated a claim.

The district court denied leave to amend, again solely on standing grounds, based on its conclusion that the amendments would be futile. *See* J.A.184-86. It acknowledged that Appellants had provided more "details on the technical process by which OpenAI uploaded [Appellants'] copyright-protected works into their training sets," but held that "[t]hese additional allegations do not render [Appellants'] harm more concrete." J.A.185. The district court did not elaborate.

The district court also rejected the analogy to unjust enrichment. According to the district court, pleading unjust enrichment requires a plaintiff to "explain how either the benefit or the expense of those costs would have found its way to or from Plaintiffs' pockets," which Appellants did not do. J.A.185. It cited no authority for its view that unjust enrichment requires more than a defendant's profiting by violating a plaintiff's legal rights.

Last, the district court denied Appellants leave to continue taking jurisdictional discovery. The court found that the chances were "remote" that "ChatGPT would output plagiarized content from one of [Appellants'] articles." J.A.186. It pointed to the fact that ChatGPT was trained on large amounts of data written by others but did not explain why that made regurgitation of Appellants' works unlikely. *Id*. And it did not expressly consider the significance of OpenAI's

recent decision to target Copyright Act plaintiffs for regurgitation suppression—a decision that would have been unnecessary if the odds really were "remote" that ChatGPT had regurgitated Appellants' articles.

### 3. The district court denies reconsideration.

Judge McMahon denied Appellants' motion roughly two hours before the Judicial Panel on Multidistrict Litigation transferred the case, at the request of OpenAI, into a multidistrict litigation centralized before Judge Stein of the Southern District of New York. J.A.187-191.[10] Because OpenAI had sought the MDL to "eliminate inconsistent rulings," J.A.189, and Judge Stein had upheld similar claims against dismissal, *see N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 311-13 (S.D.N.Y. 2025), Appellants sought reconsideration before Judge Stein of Judge McMahon's orders dismissing the complaint and denying leave to amend. J.A.192.[11]  Judge Stein denied the motion on June 18, 2025.  J.A.194-99.  *See In re*

---

[10] Judge McMahon was aware of the impending transfer.  *See* J.A.184 n.1.

[11] Judge Stein's decision pertained to three consolidated cases: one brought by the New York Times, a second brought by a group of news organizations led by the New York Daily News, and a third brought by the Center for Investigative Reporting. Judge Stein held that all three sets of plaintiffs had standing and that the *Daily News* and *Center for Investigative Reporting* plaintiffs stated a claim under 17 U.S.C. § 1202(b)(1).  The Center for Investigative Reporting's operative complaint is the most similar to Appellants' proposed amended pleading and was drafted by the same counsel.  *Compare* J.A.102-25 *with* First Amended Complaint, *The Center for Investigative Reporting, Inc. v. OpenAI, Inc.*, No. 24-cv-04872 (S.D.N.Y. Sept. 24, 2024), ECF No. 88.  The MDL also included a case brought by a different news organization that had not been consolidated with the others, where Judge Rakoff, too, had upheld a similar complaint against the same challenges.  *See The Intercept*

*OpenAI, Inc., Copyright Infringement Litig.*, No. 24-cv-01514, 2025 WL 1707564 (S.D.N.Y. June 18, 2025). He held that though his ruling is "admittedly inconsistent" with Judge McMahon's, such inconsistency was insufficient to warrant relief from judgment under Fed. R. Civ. P. 60(b)(6), which he found to provide the governing standard. J.A.199.[12] Appellants appealed on July 16, 2025. J.A.200.

## V. SUMMARY OF ARGUMENT

OpenAI harmed Appellants by removing CMI from their copyright-protected news articles. Under Article III, a plaintiff has standing if it suffers a harm with a close relationship to a historical injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Appellants suffered three distinct harms corresponding to two injuries with indisputable historical pedigrees: copyright infringement and unjust enrichment. The district court erred by finding no standing.

*First*, Appellants suffered a harm that categorically affects all creators whose CMI is unlawfully removed from their works. As three district courts correctly observed, the DMCA prohibits a narrow class of CMI removals: those that will likely conceal or abet a likely infringement. Because violating the DMCA requires a likely infringement, these courts held, CMI removal causes a harm similar to infringement

---

*Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 26-29 (S.D.N.Y. 2025); *compare* J.A.102-25 *with* First Amended Complaint, *The Intercept Media, Inc. v. OpenAI, Inc.*, No. 24-cv-01515 (S.D.N.Y. June 21, 2024), ECF No. 87.
[12] Appellants do not seek review of Judge Stein's decision.

itself: it harms creators' incentives to make new works and thus undermines the very purpose of copyright law. Both copyright infringement and CMI removal also involve unauthorized interference with a creator's property, which has always sufficed to ground standing. *See The Intercept Media, Inc. v. OpenAI, Inc*., 767 F. Supp. 3d 18, 26-29 (S.D.N.Y. 2025); *N.Y. Times Co. v. Microsoft Corp*., 777 F. Supp. 3d 283, 311-12 (S.D.N.Y. 2025); *Kadrey v. Meta Platforms, Inc*., No. 23-cv-03417, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025). Alone among courts to consider the question, the court below reached the opposite result by reasoning that a defendant can infringe copyright without violating the DMCA. J.A.95. But this Court has rejected that "element-by-element" approach to Article III. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 n.6 (2d Cir. 2024). It suffices if the statutory violation implicates the same "kind of harm" as the historical injury, which CMI removal does. *Id*.

**Second**, Appellants suffered a separate harm akin to copyright infringement specific to the facts of this case. OpenAI removed CMI through a process that involved creating new, CMI-less copies of Appellants' articles. This creation of new copies actually infringed Appellants' rights under section 106 of the Copyright Act, so it plainly has a "close relationship" to copyright infringement. *TransUnion*, 594 U.S. at 424. The district court held that fact irrelevant because the DMCA does not require removal to occur via infringement. J.A.185. But this neglects that

- 18 -

*TransUnion* itself found standing by way of analogy to defamation for the subset of claims involving actual dissemination, even though dissemination was not an element of the statutory claim, because that dissemination was part of the way in which the defendant's legal violation impacted the plaintiffs. Here, OpenAI's violation similarly impacted Appellants by infringing their copyrights, thus harming them, and it is irrelevant that the DMCA does not require removal by infringement.

**Third**, Appellants were also harmed in a way that closely resembles unjust enrichment. By violating Appellants' rights against CMI removal, OpenAI saved expenses it otherwise would have incurred in training its highly lucrative AI models, leading to unjust profits. The district court rejected the analogy because Appellants did not allege that these profits corresponded to a proven economic loss or a missed benefit. J.A.185. But unjust enrichment does not require this, as this Court's standing cases confirm. *See Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 51-56 (2d Cir. 2024), cert. denied, 145 S. Ct. 550 (Nov. 12, 2024); *Moreira v. Société Générale, S.A.*, 125 F.4th 371, 385 (2d Cir. 2025). It instead suffices that the defendant profit by violating the plaintiff's legal rights, which is exactly what Appellants alleged.

The district court also rejected Appellants' standing theories because it preferred a different one: that alleging standing required Appellants to identify specific instances of ChatGPT disseminating their articles without CMI. But that

theory stems from an incorrect application of *TransUnion*, which required dissemination only because its plaintiffs asserted a reputational injury that depends on dissemination as their basis for standing. Appellants never claimed a reputational harm as that basis, or any other harm that would require dissemination. So dissemination is a *non-sequitur*.

If standing under the DMCA did require dissemination, though, the district court should have allowed jurisdictional discovery. OpenAI, and OpenAI alone, possesses evidence of CMI-less regurgitations, and there is a reasonable likelihood that discovery would have proven fruitful. Indeed, this precise discovery is being negotiated in all the other cases in the MDL.

After finding standing, the Court should remand the case for the district court to address OpenAI's Rule 12(b)(6) arguments in the first instance. *See Hunter v. McMahon*, 75 F.4th 62, 73 n.15 (2d Cir. 2023). But if it decides to address the issue for the first time on appeal, the Court should uphold Appellants' proposed amended complaint for reasons that have been embraced by the other district courts to consider similar allegations against OpenAI. *See Intercept*, 767 F. Supp. 3d at 29-31; *N.Y. Times*, 777 F. Supp. 3d at 314-16. In the first place, OpenAI disputed that Appellants are a "person injured" under 17 U.S.C. § 1203(a). But text, precedent, and legislative history confirm that this provision simply authorizes a civil remedy for DMCA

violations and does require anything beyond Article III. Appellants, moreover, were "injured" under any reasonable meaning of that term.

OpenAI also contested Appellants' allegations as to the DMCA's second *scienter* element: that OpenAI knew, or had reasonable grounds to know, that removing Appellants' CMI would induce, enable, facilitate, or conceal an infringement. *See* 17 U.S.C. § 1202(b)(1). But that is incorrect, particularly given the lenient standard for *scienter* that applies at the dismissal stage. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999). In fact, Appellants plausibly alleged that CMI removal would likely abet and conceal infringement by both OpenAI and its users.

## VI. STANDARD OF REVIEW

This Court applies *de novo* review to the district court's decision on standing, both in the context of its initial dismissal and in the denial of leave to amend on account of futility. *See Sonterra Cap. Master Fund Ltd. v. UBS AG*, 954 F.3d 529, 533 (2d Cir. 2020) (dismissal); *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (denial of leave to amend). It reviews denials of jurisdictional discovery for abuse of discretion. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011). And should the Court reach the adequacy of the pleadings under Fed. R. Civ. P. 12(b)(6), it will address that *de novo* too. *See Hunter*, 75 F.4th at 73 n.15.

- 21 -

# VII. ARGUMENT

## A. Appellants have standing to bring a CMI removal claim.

To sue in federal court, a plaintiff must plead a "concrete injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).[13] As the Supreme Court explained in *TransUnion*, an injury is "concrete" if it has "a close historical or common-law analogue." *Id.* at 424. The asserted harm need not be an "exact duplicate" of the historical injury. *Id.* It also need not satisfy all the historical injury's elements; the two require only a "close relationship." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 n.6 (2d Cir. 2024) (quoting *TransUnion*, 594 U.S. at 433). Nor need the Plaintiff's injury in fact be an element of its claim. *See TransUnion*, 594 U.S. at 432-44 (finding standing to sue for maintenance of false credit information based on whether that information had been disseminated). The district court found no standing and thus dismissed the complaint and denied leave to amend on account of futility. It erred in doing so.

---

[13] OpenAI did not dispute the other standing elements, which Appellants plainly alleged. *See TransUnion*, 594 U.S. at 423 (describing other elements of standing). The injury is particularized because the CMI OpenAI removed pertained to Appellants. OpenAI caused the injury for the same reason. And the injury can be redressed by money damages.

1. **At a categorical level, OpenAI's CMI removal concretely harmed Appellants by causing property-based injuries closely related to copyright infringement.**

The *TransUnion* analysis involves two steps. First, the plaintiff must identify a historical or common-law injury. And second, it must show that the historical injury bears a close relationship to its asserted harm. *See TransUnion*, 594 U.S. at 424. Appellants did both.

*First*, the harm stemming from copyright infringement is a historical injury. Historical injuries include those "specified by the Constitution itself." *Id*. at 425. And the Constitution expressly empowers Congress to protect copyrights, which the first Congress did in 1790. *See* U.S. Const. art. I § 8 cl. 8; Copyright Act of 1790, Acts of May 31, 1790.

Copyright exists to incentivize creation for the public's benefit, and the ban on infringement exists to protect those incentives. *See Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 450 (1984) ("The purpose of copyright is to create incentives for creative effort."). There is no mystery to this. It is a well-established, foundational doctrine in copyright law that people are more likely to invest their time and energy in creating new works if they can expect a return. *See Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of

- 23 -

knowledge a fair return for their labors.").  Uncompensated infringements thus harm the incentives to create and undermine the purpose of copyright law.

Copyright infringement and the attendant harmed incentives, without more, have always been a concrete injury *per se*.  This is clear from the first Copyright Act, which imposed liability at a rate of fifty cents per infringing page, full stop.  *See* Copyright Act of 1790, ch. 15, § 2.  The Act's current iteration shares that structure, as it allows creators to recover statutory damages based on infringement alone.  *See* 17 U.S.C. § 504(c)(1).  Congress could have required creators to prove more, such as economic loss to them, profits to the infringer, or a specific showing of harm to incentives in a given case.  But it did not, because such a mandate "would fall short of an effective sanction for enforcement of the copyright policy."  *F.W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952); *see also Jewell-La Salle Realty Co. v. Buck*, 283 U.S. 202, 208 (1931) (construing Copyright Act to mandate minimum statutory damages of $10 per performance even if "there is no showing as to actual loss").  That policy, again, is not merely to protect creators' bottom lines, but to incentivize them to create new works.  *See Sony*, 464 U.S. at 429 (describing copyright as "intended to motivate the creative activity of authors and inventors by the provision of a special reward").

***Second***, copyright infringement has a close relationship to removal of copyright management information because both protect against the same "kind of

harm." *Salazar*, 118 F.4th at 542 n.6 (quoting *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024), cert. denied, 145 S. Ct. 169 (2024)). Both harm "the same incentives to create." *The Intercept Media, Inc. v. OpenAI, Inc*., 767 F. Supp. 3d 18, 28 (S.D.N.Y. 2025). As *Intercept* explained, the DMCA does so by conditioning liability on the defendant's "know[ledge], or … reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." *Id*. (quoting 17 U.S.C. § 1202(b)). This element—the second half of the DMCA's "double-*scienter*" requirement[14]—connects CMI removal to a likely actual infringement. *See Mango v. BuzzFeed, Inc*., 970 F.3d 167, 172 (2d Cir. 2020) (holding that section 1202(b) requires a "likely" infringement). Inducing, enabling, or facilitating an infringement increases the likelihood that an infringement will occur. Concealing an infringement, in turn, prevents the creator from discovering it and thus enforcing its rights, and also enables the concealer to profit from the creator's work by encouraging third parties to interact with the infringing copy rather than the original.

Whether or not removing CMI actually abets or conceals an infringement in every case, "the increased possibility of infringement makes it more likely that [Appellants] (or some other publication) will no longer find it worthwhile to create new articles." *Intercept*, 767 F. Supp. 3d at 28. After all, if more infringements will

---

[14] The first half is that the defendant remove CMI intentionally. *See Mango v. BuzzFeed, Inc*., 970 F.3d 167, 172 (2d Cir. 2020) (discussing similar double-*scienter* requirement under 17 U.S.C. § 1202(b)(3)).

likely occur or be concealed, news publishers will no longer be able to reap the full rewards for their creations, which harms their "incentives to create." *Id*. Because copyright infringement protects against the same kind of harm, the two have a close relationship. *See also N.Y. Times Co. v. Microsoft Corp*., 777 F. Supp. 3d 283, 311-12 (S.D.N.Y. 2025); *Kadrey v. Meta Platforms, Inc*., No. 23-cv-03417, 2025 WL 744032, at *1 (N.D. Cal. Mar. 7, 2025). This is, again, a foundational principle of copyright law, and courts have never required proof of harmed incentives beyond the fact of the violation itself. The violation has always proven the harm.

The similarity in harms is reflected in the similarities between the remedies Congress has afforded. Copyright infringement plaintiffs have the option to recover either (a) actual damages plus profits, or (b) statutory damages. *See* 17 U.S.C. § 504(a). CMI removal plaintiffs have the same choice. *See* 17 U.S.C. § 1202(c)(1). Congress's enactment of identical remedies—and the absence of a need to prove actual damages or profits—reflects an evident judgment that, like copyright infringement, CMI removal in and of itself harms creative incentives. While Congress's view is not dispositive, it is entitled "due respect" in the standing analysis. *TransUnion*, 594 U.S. at 425. That respect should, if anything, be magnified if the statute reflects an express consideration by Congress that a new cause of action is analogous to a particular historical injury, as the DMCA does by providing identical remedies to the historical injury of copyright infringement.

- 26 -

Further, though not necessary to sustain the analogy, CMI removal also resembles copyright infringement in a more basic way. Both, in short, involve interference with one's copyright-protected property. *See, e.g.*, *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932) (describing copyright owner's right as one simply to "exclude others from using his property"); *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (describing copyright plaintiff's harm as one to "a property interest in the copyrighted material"). Copyright infringement involves making unauthorized copies, while CMI removal involves separating copies from their CMI. In each case, a person tampers with a copyright-protected work.

Interference with copyright-protected property, as shown above, is a *per se* harm. In fact, interference as a *per se* harm is common to property rights generally. For instance, perhaps ***the*** prototypical common-law property-interference claim— trespass to land—is *per se* actionable. *See* Restatement (Second) of Torts § 163 (1965) ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."). The same goes for common-law trespass to chattels in at least some jurisdictions. *See Grace v. Apple, Inc.*, 328 F.R.D. 320, 346 (N.D. Cal. 2018) (listing states where, "interference is enough" for liability for trespass to chattels, even without a further "showing of harm").

- 27 -

Likewise, physical takings are actionable under the Fifth Amendment even if they "result[] in only a trivial economic loss," underscoring again that interference with property is *per se* a traditional harm that can be redressed in federal court. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 151 (2021). Because CMI removal is, at bottom, an interference with copyright-protected property, it harms the right against interference just as it harms the incentive to create. Indeed, this analogy is closer than that between interference with mutual fund voting rights and common-law trespass to chattels, which was sufficiently close to support standing in *Saba Capital Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 116 (2d Cir. 2023).

The district court rejected the copyright infringement analogy only by applying a construction of *TransUnion* that this Court has rejected. According to the district court, the analogy fails because "Defendants may, absent permission, reproduce or even create derivatives of Plaintiffs' works—***without incurring liability under Section 1202***—as long as Defendants keep Plaintiffs' CMI intact." J.A.95. Put differently, per the district court, the analogy is too attenuated because one can infringe copyright without violating the DMCA.

By requiring that copyright infringement also violate the DMCA, the district court presupposed that a statutory violation and the historical injury must have corresponding elements. But as this Court held in *Salazar*, none of its post-

- 28 -

*TransUnion* cases have required this; they have instead considered whether, more generally, the two involve similar "kind[s] of harm." *Salazar*, 118 F.4th at 542 n.6. In a case cited approvingly by *Salazar*, *see id.*, the Third Circuit explained the superiority of the "kind of harm" approach over the district court's "element-for-element" test: if Article III required a perfect correspondence among the elements, Congress could never create a cause of action that did not exist historically. But *TransUnion* rejected that result by disavowing an "exact duplicate" requirement. *See Barclift v. Keystone Credit Servs.*, LLC, 93 F.4th 136, 143-45 (3d Cir. 2024), cert. denied, 145 S. Ct. 169 (2024). The Supreme Court instead instructed courts to consider "harms," not "elements," which the "kind of harm" approach does. *See id.* By focusing on elements, the district court erred.

While the right against CMI removal did not exist until Congress enacted the DMCA, it is simply one in a long line of rights Congress has added over the centuries to protect creators' interests and encourage creation. *See Mango*, 970 F.3d at 172 n.2 (holding that the "purpose of the DMCA … is to provide broad protections to copyright owners"); *Intercept*, 767 F. Supp. 3d at 27-28 (noting that "Congress has, responding to technological change, supplemented and changed those rights regularly over time," such as by giving authors rights to derivative works). Because violation of that right causes the same kind of harm as copyright infringement, it is

a concrete Article III injury. And because Appellants alleged such a violation, the district court erred in dismissing their complaint for lack of standing.

### 2. OpenAI's particular manner of CMI removal harmed Appellants by infringing their copyright.

Even if CMI removal does not *per se* have a close relationship to copyright infringement, it does on the facts of this case. That is because OpenAI removed Appellants' CMI by infringingly copying Appellants' articles. J.A.109-10; J.A.113. Put simply, CMI removal has a close relationship to copyright infringement when it happens *by* copyright infringement. Appellants were harmed because their copyright was infringed.[15]

The district court disagreed, but only again by misapplying *TransUnion*. In denying leave to amend, the district court held that the relevant allegations were mere "details on the technical process by which OpenAI uploaded Plaintiffs' copyright-protected works into their training sets" that did not change the nature of Appellants' alleged harm. J.A.185. This appears to reflect a view that *how* the statutory injury occurred has no bearing on the standing analysis, and that to determine the nature of the plaintiff's alleged harm, the court may only look to the

---

[15] That conclusion holds whether or not OpenAI has any defenses to its *prima facie* infringement. Defenses might justify or excuse *prima facie* infringement, but they do not negate its harm, which is the relevant factor for standing purposes.

elements of the plaintiff's cause of action—elements the court had already held disanalogous to copyright infringement.

But in addition to again wrongly employing the "element-by-element" approach to standing, the court missed that *TransUnion* itself looked beyond the cause of action. There, a credit reporting agency kept credit files that falsely flagged plaintiffs as potential terrorists, in alleged violation of the Fair Credit Reporting Act. *See TransUnion*, 594 U.S. at 420. The Court divided plaintiffs into two sets: those whose credit files were published to third parties, and those that were not. *See id*. at 432-33. The first set had standing but not the second. *See id*. at 432-34. That difference was not internal to the Fair Credit Reporting Act; publication is not an element. *See* 15 U.S.C. § 1681e(b). The difference stemmed instead from the ***impact*** of the defendant's statutory violations. The credit reporting agency harmed the reputations of the plaintiffs whose files it published to third parties, thus causing a defamation-like harm. But because undistributed files are not reputationally harmful, the same did not go for the others. *See TransUnion*, 594 U.S. at 434. As the Court put it, the defamed plaintiffs suffered an "injury in fact," while the others did not. *Id*. at 433. So under Article III, the nature of a plaintiff's harm, and hence the plaintiff's standing, can turn on facts beyond the cause of action.

Under *TransUnion*, only one result can follow here: OpenAI caused an infringement-based harm by removing Appellants' CMI through actual

infringement. Not all DMCA defendants will remove CMI through infringement. So some plaintiffs will suffer no infringement-based injury and will need to ground standing some other way. But that does not diminish the infringing nature of the harm OpenAI caused Appellants. If *TransUnion*'s defamed plaintiffs have standing, Appellants do too.

### 3. OpenAI's unjust enrichment also confers standing.

Copyright infringement aside, Appellants also have standing because, by removing their CMI, OpenAI unjustly enriched itself. Consider again the *TransUnion* framework.

**First**, unjust enrichment is a historical injury under *TransUnion*. This Court has held as much. *See Moreira v. Société Générale, S.A.*, 125 F.4th 371, 385 (2d Cir. 2025) (finding standing under Helms-Burton Act based on an analogy to unjust enrichment).

The DMCA, moreover, protects against unjust enrichment by allowing plaintiffs to disgorge the violator's profits. *See* 17 U.S.C. § 1203(c)(1). Courts have characterized disgorgement remedies as sounding in unjust enrichment, including under section 504(b) of the Copyright Act, 17 U.S.C. § 504(b). *See Sammons v. Colonial Press*, 126 F.2d 341, 345 (1st Cir. 1942) ("The theory was that it was unconscionable for an infringer to retain a benefit which he had received by the appropriation and use of the plaintiff's property right; and to prevent unjust

enrichment the infringer was treated as a trustee ex maleficio of his ill gotten gains."); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (recognizing that Copyright Act's disgorgement-of-profits provision exists "to prevent the defendant's unjust enrichment"). That characterization holds equally for the substantively identical provision in section 1203 of the DMCA.

***Second***, Appellants' harm bears a close relationship to unjust enrichment. As alleged in the Proposed First Amended Complaint, wrongly removing Appellants' CMI saved OpenAI expenses it otherwise would have incurred training its models not to emit CMI, since removing CMI at the outset is cheaper than retraining a model that had learned to emit it. J.A.121.

This is unjust enrichment. Per the American Law Institute, "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) of Restitution and Unjust Enrichment, § 1 (2011) ("Third Restatement"). "Unjust enrichment" includes an enrichment by the defendant "'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." *Id*. § 1 cmt. a. Those "legally protected rights," in turn, derive from "other legal rules," *id*. § 44 cmt. a, including federal statutes regulating the "misappropriation or infringement of another person's legally protected rights in any … information, *id*. § 42. And enrichments are not limited to gaining more assets. "A saved expenditure" also counts. *Id*. § 1 cmt. d. *See also*

- 33 -

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc*., 68 F.4th 792, 809 (2d Cir. 2023) (holding that "avoided costs are recoverable as damages for unjust enrichment under the [Defend Trade Secrets Act]"), cert. denied, 144 S. Ct. 352 (2023).

Appellants suffered that kind of harm. OpenAI enriched itself in violation of Appellants' legally protected rights—namely, the right against CMI removal enshrined in the DMCA—and by doing so it achieved a saved expenditure. So Appellants' injury is closely related to unjust enrichment, which suffices to support standing.

Without citing any authority, the district court rejected the comparison to unjust enrichment because "Plaintiffs do not explain how either the benefit or the expense of those costs [*i.e.*, the costs saved by OpenAI] would have found its way to or from Plaintiffs' pockets." J.A.185. But this holding neglects both the Third Restatement—which disclaims the need for a proven economic loss or missed benefit—and, more importantly, two of this Court's post-*TransUnion* standing cases. All confirm that harms sounding in unjust enrichment only require that the defendant profit from violating the plaintiff's legal rights.

The first case, *Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Capital Management, LLC*, 105 F.4th 46 (2d Cir. 2024), cert. denied, 145 S. Ct. 550 (Nov. 12, 2024), upheld a plaintiff's standing to recover short-swing profits obtained in

violation of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Section 16(b) "requires owners of more than ten percent of a company's stock … to disgorge profits made by buying and selling that company's stock within a six-month window." *Packer*, 105 F.4th at 49. A section 16(b) violation is complete upon an unlawful profit and does not require that the profit corresponds to a proven economic loss or a missed benefit. Indeed, its "strict liability rule" is effective only because such things often ***cannot*** "be proved." *Id*. at 53. *Packer*'s recitation of the facts, moreover, did not suggest any such loss or missed benefit. *See generally id*. Neither did *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012), which *Packer* reaffirmed in light of *TransUnion*. Nor did *Microbot Medical, Inc. v. Mona*, No. 24-559, 2025 WL 262590 (2d Cir. Jan. 22, 2025), cert. denied, No. 24-1106, 2025 WL 1549795 (U.S. June 2, 2025), which reaffirmed *Packer*. Indeed, *Packer* itself characterized *Donoghue*'s holding as "categorically" applying to section 16(b) violations. *Packer*, 105 F.4th at 52.

To be sure, *Packer* drew its comparison to the historical cause of action for breach of fiduciary duty without expressly discussing unjust enrichment. But unjust enrichment just is the harm resulting from a fiduciary duty breach. *See Cantor v. Perelman*, 414 F.3d 430, 435 (3d Cir. 2005) (holding that a breach of fiduciary duty "would justify an unjust enrichment award without regard to whether the fiduciary caused the beneficiary to act to its detriment"); *Grynberg v. Total S.A.*, 538 F.3d

- 35 -

1336, 1352 (10th Cir. 2008) (reasoning that "[t]here is no practical difference between (1) a tort claim for breach of a fiduciary duty in which the plaintiff seeks disgorgement of (or a constructive trust on) profits or property and (2) an unjust-enrichment claim in which the enrichment is claimed to be unjust because it was accomplished through a breach of fiduciary duty"); Third Restatement, § 43 cmt. b (noting that a gain resulting from a fiduciary breach is a "prime example" of unjust enrichment); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) (holding, citing Third Restatement section 43, that a fiduciary "who gains a benefit by breaching his or her duty must return that benefit to the beneficiary"). Thus, though *Packer*'s cause of action might differ from that of this case, it implicates a similar "kind of harm": unjust enrichment. *Salazar*, 118 F.4th at 542 n.6. And that harm requires only a profit obtained by violating the plaintiff's rights, not a further proven economic loss or missed benefit.

The second case, *Moreira*, supports the same result. Arising under the Helms-Burton Act, its plaintiffs' harm closely related to unjust enrichment because defendants "benefited from the plaintiffs' exploited property," which they had obtained from the Fidel Castro regime after the latter had confiscated it from plaintiffs' predecessors. *Moreira*, 125 F.4th at 386. While the Court also referenced plaintiffs' lost investment opportunities, *see id.*, defendants' profits were sufficient for standing. This is apparent from the Court's reliance on the statutory purpose: to

- 36 -

"deny traffickers any profits from economically exploiting Castro's wrongful seizures." *Id*. (quoting 22 U.S.C. § 6081(11)). And nothing in the opinion suggests that a Helms-Burton Act plaintiff would lose standing if it showed those profits but not a further economic loss.

Last, even if unjust enrichment, as a historical matter, strictly did require a proven economic loss or missed benefit, Article III does not require an "exact duplicate." *TransUnion*, 594 U.S. at 424. And suffering an unlawful profit at least implicates the same "kind of harm" as the historical injury, even if the elements do not perfectly align. *Salazar*, 118 F.4th at 542 n.6.

Thus, by requiring a proven economic loss or missed benefit, the district court held Appellants to a burden they did not bear. It sufficed that Appellants allege that OpenAI profited from its unlawful removal of Appellants' CMI. Because Appellants alleged that, they have standing.

### 4. The district court wrongly imposed a dissemination requirement for standing.

The district court rejected Appellants' standing theories based on its surmise that dissemination of a CMI-less work is an indispensable element of standing. *See* J.A.95 ("I am not convinced that the mere removal of identifying information from a copyrighted work—absent dissemination—has *any* historical or common-law analogue."). It did not explain that conclusion but appears to have accepted

OpenAI's argument that because standing under the Fair Credit Reporting Act requires dissemination, standing under the DMCA must too.

Yet as *Intercept* and *New York Times* explained in rejecting that argument, there is no basis to require dissemination for standing under the DMCA. True, *TransUnion* required dissemination. But it did so only because its plaintiffs alleged reputational harm as their basis for standing, which cannot result from an unpublished credit report, and dissemination is thus essential to the injury resulting from the defamation tort to which they analogized their alleged injuries. Because Appellants did not allege reputational harm or analogize their injury to defamation, there is no basis to import a dissemination requirement. *See Intercept*, 767 F. Supp. 3d at 28-29; *N.Y. Times*, 777 F. Supp. 3d at 312 n.6. And dissemination has never been a component of the historical harms in this case: copyright infringement and unjust enrichment.

Indeed, if dissemination were required under an analogy to copyright infringement, then standing for infringement itself would be constrained in the same way. Not only is there no historical basis for that result, but it would deprive courts of jurisdiction to hear copyright infringement claims brought against defendants who used purportedly infringing copies for their own purposes. *See, e.g., Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 915 (2d Cir. 1994) (use of copied

- 38 -

journal articles within a research company found to infringe). In short, there is no basis to require dissemination, and the district court wrongly did so.

### 5. Were dissemination required, the district court should have allowed jurisdictional discovery.

Were there a dissemination requirement, though, Appellants at least should have been allowed to discover the relevant jurisdictional facts—as they had been attempting to do for months before the court dismissed their complaint. J.A.117.[16]

As this Court has stressed, "a court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). Jurisdictional discovery is especially appropriate when the defendant controls the relevant jurisdictional evidence. *See id.* (affirming denial of jurisdictional discovery because the plaintiff possessed that evidence). While the Court reviews a district court's denial of jurisdictional discovery for abuse of discretion, *see Amidax*, 671 F.3d at 149, that discretion has bounds. Even mandamus can be appropriate when a court denies

---

[16] Appellants had not moved to compel because the parties had not yet reached an impasse in November of 2024, when the district court dismissed the complaint. In fact, the specifics of the output log inspection are still being litigated in all the other cases in the MDL. See Letter from Edward A. Bayley et al to Magistrate Judge Ona T. Wang, *In re OpenAI, Inc. Copyright Infringement Litigation*, 25-md-03143 (S.D.N.Y. Aug. 4, 2025), ECF No. 436.

jurisdictional discovery of evidence in the defendant's sole possession.  *See Inv. Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707-08 (2d Cir. 1972).

If standing does require dissemination, OpenAI alone possesses the relevant jurisdictional evidence: CMI-less regurgitations of Appellants' articles.  J.A.114. Neither the district court nor OpenAI disputed that Appellants lack access to that evidence.

Instead, the district court denied jurisdictional discovery because "Plaintiffs are looking for a needle in a haystack"—in other words, because that discovery would not "likely" locate any jurisdictional evidence.  J.A.186.  The Federal Rules of Civil Procedure do not condition discovery on needles or haystacks, except perhaps in the context of proportionality, on which the district court did not rely. And by requiring a "likely" showing, the district court imposed a higher bar than courts typically require for permitting limited jurisdictional discovery in light of this Court's admonition that plaintiffs be given "ample opportunity" to secure evidence going to jurisdiction.  *Amidax*, 671 F.3d at 149.  *See, e.g.*, *Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (Nathan, J.) (requiring a "threshold showing for some basis to assert jurisdiction, such as facts that would support a colorable claim of jurisdiction"); *Ayyash v. Bank Al-Madina*, No. 04-cv-9201, 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (Lynch, J.) (authorizing discovery where

- 40 -

the plaintiff made a "sufficient start" toward establishing jurisdiction but not a "prima facie showing").

Whether or not discovery requires such a likelihood, Appellants have shown it. As Appellants alleged, ChatGPT has been found to regularly plagiarize its training data, and that training data includes tens of thousands of Appellants' copyright-protected articles. J.A.103; J.A.108; J.A.113. Even OpenAI has admitted that ChatGPT regurgitates. J.A.115. Appellants also alleged OpenAI's capacity to regurgitate news articles specifically. J.A.114. Though those articles did not include Appellants', this is due to OpenAI's recent efforts to suppress regurgitations of works owned by news organizations that sued it, which suggests that users may well have regurgitated Appellants' articles before those measures were implemented— which Appellants could learn through jurisdictional discovery. J.A.115. This makes it sufficiently likely that discovery would unearth evidence of dissemination, which would support standing even under the district court's (incorrect) theory.

Recent events confirm this point. In the other cases in the MDL brought by news organizations, OpenAI agreed that plaintiffs may conduct the precise discovery Appellants seek here, namely an inspection of its output logs for regurgitations of news articles. The parties agree that some sampling of those logs is appropriate and disagree only on specifics, such as how many tens of millions of samples should be inspected. *See* Letter from Edward A. Bayley et al to Magistrate Judge Ona T.

Wang, *In re OpenAI, Inc. Copyright Infringement Litigation*, 25-md-03143 (S.D.N.Y. Aug. 4, 2025), ECF No. 436. In short, the district court was wrong to deny discovery into the exact same evidence that OpenAI itself has agreed to in similar cases. To be clear, Appellants' DMCA claims should not be limited to instances of regurgitation through a dissemination requirement for standing, and the appeal should be resolved on the broader grounds previously discussed. But if dissemination was a requirement, Appellants are entitled to discovery on dissemination that lies in OpenAI's control.

*** 

Summing up, Appellants have standing because their injury is closely related to both copyright infringement (including because OpenAI caused it *by* infringement) and unjust enrichment. Standing for a CMI removal injury does not require dissemination, but if it did, the court should have allowed jurisdictional discovery.

## B. Appellants stated a claim.

OpenAI also moved to dismiss for failure to state a claim and resisted Appellants' motion for leave to amend for the same reason, arguing that the amendments were futile. Because the district court dismissed the complaint and denied amendment for lack of standing, it did not reach OpenAI's failure-to-state-a-claim argument. And because the district court did not reach that issue, this Court

- 42 -

should not either. *See, e.g.*, *Hunter v. McMahon*, 75 F.4th 62, 73 n.15 (2d Cir. 2023) (after reversing dismissal for lack of standing, remanding for district court to consider alternative grounds for dismissal in the first instance). Appellants address it here out of an abundance of caution.

If the Court considers the adequacy of the pleadings, it should reach the same conclusion as *Intercept* and *New York Times* when faced with similar complaints: the Proposed First Amended Complaint states a claim. If the Court concludes otherwise, it should allow the district court to entertain a further motion for leave to amend to correct whatever defects it might identify. Leave to amend should be freely given, and would be warranted here because it would be the first time any court will have dismissed a CMI removal complaint against OpenAI on these grounds. *See Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir. 1991). In addition, OpenAI will suffer no cognizable prejudice, particularly if these defects affect the other plaintiffs in the MDL, which may move to make similar amendments. Appellants would thus be in the same position as the other plaintiffs in the centralized proceeding sought and obtained by OpenAI to achieve consistency among the cases.

While reserving the right to address any argument OpenAI might raise in support of affirmance on alternative grounds, Appellants focus on the two grounds OpenAI offered in resisting amendment. As *Intercept* and *New York Times* held, they lack merit.

- 43 -

### 1. Appellants were "injured" under the DMCA.

OpenAI argued that even if Appellants have Article III standing, they flunk 17 U.S.C. § 1203(a), which provides, "Any person injured by a violation of section 1201 or section 1202 may bring a civil action." According to OpenAI, "injured" under this section requires more than Article III does.

But the evident purpose of this section is merely to create a civil remedy for a violation of one of the prior two sections. Congress titled section 1203 "Civil Remedies," Pub. L. 105-304, § 1203, 112 Stat. at 2874, and refers in section 1202(b) to "civil remedies under section 1203," 17 U.S.C. § 1202(b). Section 1203, then, is a remedy-creating statute. This Court has held as much. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (holding, citing section 1203, that "[t]he DMCA creates civil remedies"). The legislative history provides the same. *See* S. Rep. 105-190, at 38 (1998) (stating that section 1203 "sets forth the general proposition that civil remedies are available for violations of sections 1201 and 1202"). Nothing suggests that "injured" under section 1203 requires more than Article III.

OpenAI cited one appellate case below, but it supports Appellants' reading. While the First Circuit suggested that having Article III standing might differ from being a "person injured" under the DMCA, it did so to note that Congress's mere creation of a remedy—as section 1203 does—is insufficient to satisfy Article III.

*See CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 107 n.7 (1st Cir. 2008) (noting that the statutory and constitutional issues are "not the same" because "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing"). This confirms that section 1203 is simply a remedy-creating statute and does not require something beyond the Constitution. So because Appellants have Article III standing, they are "injured" under the statute.

Assuming *arguendo* otherwise, Appellants were "injured" anyway. As did the *New York Times* plaintiffs, Appellants alleged that OpenAI harmed them by "concealing defendants' own copyright infringement [and] enabling and facilitating the copyright infringement of end users," which is plainly injurious. *N.Y. Times*, 777 F. Supp. 3d at 313.

### 2. Appellants plausibly alleged *scienter*.

The DMCA imposes what this Court has called a "double-*scienter*" requirement. *Mango*, 970 F.3d at 172. First, the defendant must remove CMI intentionally. And second, it must do so "knowing, or … having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1). In resisting Appellants' proposed amendments, OpenAI did not

dispute that Appellants plausibly alleged intent.[17]  But it did dispute the allegations as to actual or constructive knowledge.

Because the issue arose at the dismissal stage, the Court construes the allegations in the light most favorable to Appellants, accepting all factual allegations as true and drawing all reasonable inferences in their favor.  *See Michael Grecco Prods., Inc. v. RADesign, Inc*., 112 F.4th 144, 150 (2d Cir. 2024), cert. denied, No. 24-768, 2025 WL 1678984 (U.S. June 16, 2025).  This Court has emphasized the need to treat *scienter* issues leniently at the pleading stage given that evidence of a defendant's knowledge is often within its sole possession.  *See Press v. Chem. Inv. Servs. Corp*., 166 F.3d 529, 538 (2d Cir. 1999) (noting that "[t]he Second Circuit has been lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences," and applying that principle to dismissal stage).  District courts have properly extended that principle to *scienter* under the DMCA.  *See, e.g.*, *Aaberg v. Francesca's Collections*, Inc., No. 17-cv-115, 2018 WL 1583037, at *9 (S.D.N.Y. Mar. 27, 2018) (Nathan, J.); *Hirsch v. CBS Broad. Inc*., No. 17-cv-1860, 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017); *Devocean*

---

[17] OpenAI's intent follows from its use of text extractor algorithms specifically designed to remove CMI.  *See* Section IV.A.3, *supra*.  OpenAI did dispute intent in *New York Times*, and the court found similar allegations sufficient for the Center for Investigative Reporting plaintiff, whose allegations on intent most closely mirror Appellants' and were drafted by the same counsel.  *See N.Y. Times*, 777 F. Supp. 3d at 314-15.

*Jewelry LLC v. Assoc. Newspapers Ltd.*, No. 16-cv-2150, 2016 WL 6135662, at *2 (S.D.N.Y. Oct. 19, 2016).

Viewed in the proper light and drawing the appropriate inferences, Appellants alleged four reasons why OpenAI knew, or had reason to know, that removing their CMI would conceal or abet[18] an infringement. Each independently suffices to satisfy the second *scienter* element.

***First***, OpenAI knew or had reason to know that removing CMI would conceal from ChatGPT users that any regurgitations of Appellants' articles infringe Appellants' copyright. OpenAI knew that ChatGPT has a propensity to regurgitate. J.A.114-15. Removing CMI from Appellants' articles before using them in training would preclude ChatGPT from emitting the CMI along with the article, since OpenAI's models would never have been trained on the CMI. J.A.118. Were the CMI present, it would have communicated to users that Appellants owned the rights to the regurgitation. J.A.119. Its absence thus concealed that fact. *Id. See N.Y. Times*, 777 F. Supp. 3d at 316 (finding similar allegations plausible).

***Second***, for much the same reason, OpenAI knew or had reason to know that removing CMI would abet infringement by its users. OpenAI knew that its users were likely to infringe; this plausibly explains why it committed to defending and indemnifying some of its users against infringement claims. J.A.120-21. OpenAI

---

[18] Appellants use "abet" as a shorthand for "induce, enable, or facilitate."

also knew that its users are likely to make further copies of ChatGPT responses; it promotes ChatGPT for that very purpose. J.A.120. And, plausibly, CMI—and the knowledge it conveys to the world that the work is copyrighted—makes users less likely to infringingly copy it because they either fear copyright liability or simply respect others' intellectual property. *Id*. By removing Appellants' CMI, OpenAI eliminated this deterrent to copying regurgitations of Appellants' works. *See N.Y. Times*, 777 F. Supp. 3d at 316 (finding similar allegations plausible); *Intercept*, 767 F. Supp. 3d at 30-31 (same).

OpenAI's main response below was to cast as "wholly conclusory" the proposition that knowing a work is copyrighted would make people less likely to copy it. OpenAI's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend Complaint or, in the Alternative, to Continue Taking Jurisdictional Discovery at 17-18, *Raw Story Media, Inc. v. OpenAI*. No. 24-cv-01514 (S.D.N.Y. Dec. 20, 2024), ECF No. 122. This professed skepticism is understandable coming from an entity set on defending its decision to exploit an untold amount of material it knew to be copyrighted without regard for creators' interests. But it does not reflect either reality or the judgment of Congress, which enacted the Copyright Act and the DMCA precisely because copyright law ***does*** deter copying.

***Third***, again for similar reasons, OpenAI knew or had reason to know that removing CMI would conceal from ChatGPT users that OpenAI committed

- 48 -

infringement in training. If CMI were present in the regurgitation, it would signal to users that the regurgitation derived from an infringing copy in OpenAI's training sets. J.A.119. The absence of CMI conceals that fact. And OpenAI plausibly knew that its training was an infringement: it has recently entered into licensing agreements with other news organizations to use their articles in training, and created tools in 2023 that it claims to allow creators to block OpenAI from using the works in training. J.A.118-19. None of that would have been necessary if OpenAI could use those works with impunity.

*Fourth*, OpenAI knew or had reason to know that removal would facilitate its training-based infringement of Appellants' articles. This is so for essentially the same reason that Appellants have standing under the unjust enrichment analogy: removing CMI saved OpenAI expenses it otherwise would have occurred in training. J.A.121.

Thus, Appellants have identified four ways in which OpenAI knew or had reason to know that removing Appellants' CMI would induce, enable, facilitate, or conceal an infringement. Though all four were plausibly alleged, only one is necessary to survive dismissal, and this Court has repeatedly held that the pleading requirements on this element are relaxed. If the Court reaches the issue, which it should not, it should hold that the Proposed First Amended Complaint states a claim.

## VIII.    CONCLUSION

By removing Appellants' CMI, OpenAI disincentivized creation, infringed Appellants' copyright, and unjustly profited from doing so. That is more than enough to vest a court with subject-matter jurisdiction. The Court should reverse the dismissal of the complaint for lack of standing and remand for further proceedings. If it finds no standing, it should reverse the denial of jurisdictional discovery. The Court should not consider whether the pleadings state a claim, but if it does, it should find that they do.

Dated: September 5, 2025            Respectfully submitted,

                                */s/ Stephen Stich Match*
                                Stephen Stich Match
                                  *Counsel of Record*
                                Matthew V. Topic
                                LOEVY & LOEVY
                                311 N. Aberdeen St., 3rd Floor
                                Chicago, IL 60607
                                Phone: (312) 243-5900
                                Facsimile: (312) 243-5902
                                Email: match@loevy.com
                                matt@loevy.com
                                ai@loevy.com
                                *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing brief complies with the requirements of Fed. R. App. P. 32 and Second Circuit Local Rule 32.1 because it uses a proportionally-spaced font, has a typeface of 14 points or more, and contains 11,754 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f), as determined by the word-count function of Microsoft Word.

Dated: September 5, 2025      */s/ Stephen Stich Match*
                                            Stephen Stich Match
                                            *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing brief via the Court's e-box on September 8, 2025 and copied counsel for Defendants-Appellees on that email. As of the time of filing and service, the Court's e-filing system is down for maintenance.

Dated: September 8, 2025      */s/ Stephen Stich Match*
                                            Stephen Stich Match
                                            *Counsel for Plaintiffs-Appellants*