# 25-1756

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

IN RE: OPENAI, INC. COPYRIGHT INFRINGEMENT LITIGATION

---

On Appeal from the United States District Court
For the Southern District of New York
(Nos. 1:24-cv-01514; 1:25-md-03143)
(Hons. Colleen McMahon and Sidney H. Stein)

---

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS
RAW STORY MEDIA, INC. AND ALTERNET MEDIA, INC.**

---

Stephen Stich Match
  *Counsel of Record*
Matthew Topic
LOEVY + LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
match@loevy.com

*Counsel for Plaintiffs-Appellants*

December 8, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I. INTRODUCTION ..............................................................................1

II. ARGUMENT ......................................................................................3

    A. Appellants' copying-based harm is traceable to the process by which OpenAI removed Appellants' CMI ......................................................3

    B. CMI removal *per se* causes the same kind of harm as copyright infringement ...................................................................................5

        1. The DMCA created property rights ........................................6

        2. Appellants have standing due to their harmed incentives to create ...................................................................................13

    C. Appellants also have standing from OpenAI's unjust enrichment ........16

        1. Historically, unjust enrichment required only an unlawful profit....17

        2. Modern standing law supports the same result....................................21

        3. Appellants plausibly alleged OpenAI's unlawful profits....................25

    D. The district court wrongly denied jurisdictional discovery ....................26

III. CONCLUSION ................................................................................28

    CERTIFICATE OF COMPLIANCE ...................................................29

    CERTIFICATE OF SERVICE .........................................................29

# TABLE OF AUTHORITIES

*Page*

*Cases*

*Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467 (2d Cir. 1985)..............................17

*Allen v. Wright*, 468 U.S. 737 (1984) ....................................................................4

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ...............26

*Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012)..........................................21

*Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024) ......................9

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959
(10th Cir. 1996)....................................................................................................10

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ...............................4

*Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016).........................................4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)..............................................15

*Collins v. Yellen*, 594 U.S. 220 (2021) ....................................................................4

*CoxCom, Inc. v. Chaffee*, 536 F.3d 101 (1st Cir. 2008) .........................................13

*Dean v. Mason*, 61 U.S. 198 (1857) ......................................................................17

*Fed. Sugar Ref. Co. v. U.S. Sugar Equalization Bd.*, 268 F. 575
(S.D.N.Y. 1920) ....................................................................................................18

*Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296 (Del. Ch. 2022).............19

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867
(E.D. Pa. 2012).....................................................................................................25

*Inv. Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705 (2d Cir. 1972)...........................26

*Kansas v. Nebraska*, 574 U.S. 445 (2015)...............................................................20

*Liu v. SEC*, 591 U.S. 71 (2020)..........................................................17, 20, 21, 22

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2020)...............................................2, 6, 12

*Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395 (2d Cir. 2019) ...........................10

*Moreno-Godoy v. Kartagener*, 7 F.4th 78 (2d Cir. 2021) ......................................21

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295 (3d Cir. 2011) ....................6

*Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Capital Management, LLC*, 105 F.4th 46 (2d Cir. 2024).....................................................................21

*Phillips v. Homfray*, 24 Ch. D. 439 (1883)...........................................................18

*Pickens' Ex'rs v. Walker's Heirs*, 33 Ky. 167 (1835) .............................................18

*Pierpont v. Fowle*, 19 F. Cas. 652 (C.C.D. Mass. 1846).......................................17

*Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020)................................23

*Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997) .................................................11, 12

*Rijeski v. Weiland*, 21 Pa. D. 313 (Pa. Com. Pl. 1910).........................................19

*Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189 (1881)...........................17, 20, 22

*Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023).......................................20

*Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298 (2d Cir. 2017)...........................................................................................5

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) .......................................15

*The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18 (S.D.N.Y. 2025) ...................................................................................6, 15

*Thole v. U.S. Bank N.A*, 590 U.S. 538 (2020)..................................................22, 23

*Tilghman v. Proctor*, 125 U.S. 136 (1888) ................................................................25

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .....................3, 14, 16, 21, 23, 24

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001) ......................13

**Statutes**

15 U.S.C. § 1125(a)(1)...............................................................................................10

17 U.S.C. § 106(3) .....................................................................................................11

17 U.S.C. § 106A(a)(1)(B) ..........................................................................................7

17 U.S.C. § 106A(b) .....................................................................................................7

17 U.S.C. § 106A(e)(1).................................................................................................7

17 U.S.C. § 201(d)(1)....................................................................................................7

17 U.S.C. § 501(a) .........................................................................................................8

17 U.S.C. § 504 ...........................................................................................................12

17 U.S.C. § 1201(a)(2)..............................................................................................9, 10

17 U.S.C. § 1201(b) ......................................................................................................9

17 U.S.C. § 1202(b) ......................................................................................................7

17 U.S.C. § 1202(b)(1)................................................................................................15

17 U.S.C § 1202(c)(1)..................................................................................................12

17 U.S.C. § 1203 ..........................................................................................................12

17 U.S.C. § 1203(c)(1)................................................................................................12

17 U.S.C. § 1203(c)(2)................................................................................................16

17 U.S.C. § 1201(b) .........................................................................................9

17 U.S.C. § 1308 .............................................................................................11

17 U.S.C. § 1309 .............................................................................................11

29 U.S.C. § 207(a)(1) ......................................................................................10

**Other Authorities**

H. Rep. No. 105-551 pt. 1 (1998) ..................................................................10

Restatement (First) of Restitution (1938) ......................................................19

Restatement (Third) of Restitution and Unjust Enrichment (2011) ........................20

S. Rep. 105-190 (1998) .....................................................................................9

Wiliam A. Keener, A Treatise on the Law of Quasi-Contracts (1893) ...................18

## I.     INTRODUCTION

In light of OpenAI's agreement on several key points, the Court need not resolve the complex issues of concreteness that occupy the vast majority of the briefs, including this one. *See* Appellant Br. at 23-30; 32-39; Appellee Br. at 20-42; 43-54. There is a far simpler way to resolve this appeal: taking as true the allegations in the complaint about the specific way in which OpenAI removed Appellants' copyright management information, Appellants suffered an Article III injury because OpenAI infringed their copyright when it removed their CMI. *See* Appellant Br. at 30-32. OpenAI concedes that copyright infringement is a concrete injury sufficient to ground standing. It instead disputes this fact-based standing theory solely on traceability grounds, and only by mischaracterizing the complaint as alleging that the relevant unlawful copying took place before the CMI removal. In fact, the complaint alleges that the two took place through the exact same conduct at the exact same time, which easily satisfies traceability.

Because OpenAI concretely injured Appellants through copyright infringement based on the specifics of this complaint, the Court need not address Appellants' argument that CMI removal and copyright infringement are *per se* similar under Article III, even when CMI removal does not involve infringement— a distinct theory of standing accepted by all district courts (other than the court below) to address the question. If the Court does consider the issue, it should find

- 1 -

OpenAI's arguments wanting. OpenAI tries to drive a wedge between CMI removal and copyright infringement by arguing that removing CMI does not violate anyone's rights. But this Court rejected that very proposition in *Mango v. BuzzFeed*. And even if the DMCA did not grant rights, its violation, like copyright infringement, harms creative incentives, which suffices for standing.

OpenAI fares no better in disputing the third of Appellants' standing theories: the analogy to unjust enrichment. As a matter of both historical unjust enrichment law and modern standing jurisprudence, OpenAI is simply wrong that a plaintiff must plead more than the defendant's unlawful gain, which Appellants did here. But again, because OpenAI concedes that copyright infringement is sufficiently concrete and relies only on a mischaracterized version of the complaint's allegations to dispute traceability under Appellant's fact-based theory, the Court need not even resolve this question to reverse.

Copyright management information, and the DMCA, play an important role in protecting the rights of digital publishers like Appellants. OpenAI—a tech giant with a valuation approaching one trillion dollars and revenue of a billion dollars a month—would have this Court kneecap those protections so it can save training costs and increase its profits from a highly lucrative and increasingly ubiquitous product that uses copyrighted content to compete with human creators without compensation. That result is contrary to the purposes of copyright law, including the

DMCA, and would hamstring Congress's ability to right wrongs made possible by new technology through an improperly broad application of *TransUnion*. This Court should reverse.

## II.     ARGUMENT

### A.     Appellants' copying-based harm is traceable to the process by which OpenAI removed Appellants' CMI.

Appellants argued that OpenAI's CMI removal concretely injured them by also infringing their copyright. *See* Appellant Br. at 30-32. OpenAI does not dispute the concreteness of that injury. *See* Appellee Br. at 25 (conceding that copyright infringement is a concrete injury in and of itself). It instead resists standing on traceability grounds, arguing that because the unlawful copying took place before the CMI removal, the CMI removal could not have caused a copying-based injury. *See id.* at 42-43. It makes no other argument on traceability specifically, or this theory of standing generally. So the viability of this standing theory can be reduced to a simple question: according to the complaint, when did the CMI removal occur relative to the copying?

The complaint alleges that OpenAI made two sets of unlawful copies. The first is the one OpenAI acknowledges: the copy it made when it downloaded Appellants' articles from the internet. *See* J.A.109; J.A.112. Appellants do not argue that CMI removal caused this copying-based injury, since as OpenAI points out, it occurred before OpenAI removed their CMI.

- 3 -

But OpenAI also made a second set of copies. After it downloaded Appellants' articles (*i.e.*, after it made the first set of copies), OpenAI used "text extractor" algorithms, called Dragnet and Newspaper, to remove the articles' CMI. J.A.109. And in the course of removing CMI via these algorithms, OpenAI created "resulting copies" that lack the CMI conveyed with the versions published on the internet. *Id.*

Appellants' copying-based injury is traceable to this second set of copies, and because it simply ignores the second set of copies, OpenAI does not argue otherwise. Traceability depends on whether the plaintiff's injury "can be traced to 'allegedly unlawful conduct' of the defendant," *Collins v. Yellen*, 594 U.S. 220, 243 (2021) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)), and thus "focuses on whether the asserted injury could have been a consequence of the actions of the defendant," *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016). Especially at the pleading stage, the traceability requirement "does not create an onerous standard," and it requires even less than proximate causation. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

Here, Appellants' copying-based injury clearly can be traced to OpenAI's allegedly unlawful conduct: making the second set of copies. That conduct— removing CMI via text extractor algorithms—directly "result[ed]" in a new infringing copy, thus causing a copying-based injury that OpenAI does not dispute

- 4 -

is concrete. J.A.109. Thus, Appellants' copying-based injury is traceable to OpenAI's removal of their CMI because they have happened by the very same act. So Appellants have standing on the facts of this case based on the particular way in which OpenAI removed their CMI.[1]

**B.    CMI removal *per se* causes the same kind of harm as copyright infringement.**

The Court can reverse on the straightforward ground discussed above without wading into the concreteness thicket. But if it chooses to, it should reverse on this ground too.

The crux of OpenAI's argument is that copyright infringement, supposedly unlike CMI removal, involves the violation of a property right, which renders the analogy between the two insufficiently close for Article III standing. According to OpenAI, the DMCA is a mere "regulatory provision" that does not protect rights. Appellee Br. at 26. But OpenAI is wrong. The DMCA *did* create a property right analogous to copyright infringement.[2] And even if it didn't, CMI removal would still be close enough to copyright infringement to satisfy Article III.

---

[1] Appellants could not have been clearer in their opening brief that OpenAI "made a new copy of the article" "[b]y using the text extractors." Appellant Br. at 7. So if OpenAI believes that the complaint does not allege this, it had ample opportunity to point that out. In any event, any ambiguities in the complaint must be construed in Appellants' favor. *See Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 302 (2d Cir. 2017).

[2] OpenAI does not dispute that, if the DMCA created property rights, then it would be sufficiently similar to copyright infringement.

### 1. The DMCA created property rights.

The most basic flaw with OpenAI's argument is that this Court has held the opposite. In *Mango v. BuzzFeed, Inc.*, which involved a cognate provision of section 1202(b), the Court held: "As for the purpose of the statute as a whole, it is undisputed that the DMCA was intended to ***expand***—in some cases ... significantly—***the rights of copyright owners***." 970 F.3d 167, 172 n.2 (2020) (emphases added) (quoting *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 303 (3d Cir. 2011)). And in *Murphy*, on which this Court relied, the plaintiff alleged unlawful CMI removal— exactly the claim here. *See Murphy*, 650 F.3d at 301. So the DMCA does not merely regulate conduct. It grants a right against intentional CMI removal when that removal will likely abet or conceal an infringement.[3] OpenAI does not even try to square its argument with this Court's holding that the DMCA "expand[s]" copyright owners' "rights." It ignores that holding entirely.

Were the Court to consider the issue on a blank slate, it should reach the same conclusion it did in *Mango*. Technology continues to evolve and, as the *Intercept* court carefully explained, "the exact contours of the property rights given to a copyright holder are not frozen in time by the Copyright Act of 1790." *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 27 (S.D.N.Y. 2025). Congress

---

[3] For ease of exposition, Appellants refer to this right simply as a right against CMI removal.

added new rights in section 1202 when it decided that technological developments warranted additional protections. Thus, rights secured by the DMCA are simply the next in a long line of rights comparable, but far from identical, to the rights that existed at the Founding. *Id.*

For instance, DMCA rights are at least as similar to traditional copyright rights as are the rights conferred by the Visual Artists Rights Act ("VARA"), which OpenAI concedes are sufficiently similar to traditional infringement. *See* Appellee Br. at 28-29. Unlike traditional copyright rights, VARA rights belong to the work's author, not the owner, cannot be transferred (even to the owner), and in some cases do not operate in any way on the author's works—such as the right not to be associated with a work the author did not create. *See* 17 U.S.C. §§ 106A(b), 106(A)(e)(1), 106A(a)(1)(B); *see also* 17 U.S.C. § 201(d)(1). Yet they suffice. The right against CMI removal is at least as similar to traditional infringement as VARA is, and thus sufficient too.

OpenAI makes five contrary arguments, but none provides a persuasive reason to treat the right against CMI removal any differently from the property rights that came before it.

*First*, OpenAI cites the text of section 1202(b), which prohibits removing CMI with reason to know that doing so will likely conceal or abet "an infringement of any right under this title." Appellee Br. at 26 (quoting 17 U.S.C. § 1202(b)).

- 7 -

According to OpenAI, this language means that removing CMI is not an infringement of copyright. *See id*. But it does not follow that removing CMI does not **violate rights** granted by the DMCA. The language instead reflects that, under the Copyright Act, "infringement" is a term of art that refers to the "violat[ion]" of rights "provided by sections 106 through 122," as well as section 106A(a). 17 U.S.C. § 501(a). In other words, "infringement" is a violation of a subset of the rights enumerated in the Copyright Act. Thus, the text does not mean that section 1202(b) confers no property right. It just means that the violation of such a right is not an "infringement" as the Copyright Act uses that term.

It is easy to see why Appellants have the better of the argument. Had Congress defined CMI removal as "infringement," that definition would have neutered the second *scienter* requirement through self-reference. In that case, it would be unlawful to remove CMI with reasonable grounds to know that doing so would conceal the removal of CMI. Since removing CMI will virtually always conceal that CMI was removed—if the CMI is removed, how would a third party know that the CMI was there to begin with?—virtually any CMI removal would satisfy that element. That problem is solved by excluding CMI removal from the definition of "infringement." That Congress solved this linguistic problem is no evidence that it failed to create a property right.

***Second***, OpenAI argues for a clear statement rule according to which Congress uses the word "right" when creating property rights. Yet it grossly mischaracterizes the one case it cites for that proposition, *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 255 (2024). As OpenAI portrays it, *Bissonette* holds: "When 'Congress want[s] to' identify or create an intellectual-property right, it 'sa[ys] so explicitly.'" Appellee Br. at 28 (quoting *Bissonette*, 601 U.S. at 255) (alterations in original). But this is what *Bissonnette* actually says: "where Congress wanted to regulate seamen or railroad employees in a particular industry, it said so explicitly." *Bissonette*, 601 U.S. 255. Nothing about property, nothing about rights.

OpenAI's supposed clear statement rule is also undermined by the DMCA's legislative history. When discussing DMCA sections 1201(a)(2) and 1201(b), which do not use the word "right," *see* 17 U.S.C. §§ 1201(a)(2), (b), the Senate Report nonetheless characterizes them as "designed to protect two distinct rights," with only section 1201(b) protecting "traditional copyright rights." S. Rep. 105-190, at 12 (1998). Thus, the Senate Report understood section 1201(a)(2) to grant a new right even though it does not use that term. *See id*.

The same goes for the House Report, on which OpenAI relies. OpenAI points out that when discussing section 1202(b), the House Report uses the word "prohibition" rather than the word "right," and claims this as evidence that the statutory term "[n]o person shall" does not grant a right. Appellee Br. at 29 (citing

H. Rep. No. 105-551 pt. 1, at 10-11, 21 (1998).)  But like the Senate Report, the House Report understands a different section, section 1201(a)(2), to confer a "right" even though that section contains no explicit rights-granting language, and even though it uses exactly the same prohibitory language as section 1202(b): "No person shall."  *See* H. Rep. No. 105-551 pt. 1 at 18 (1998); *see also* 17 U.S.C. § 1201(a)(2). Thus, even in the DMCA, Congress saw itself as creating rights through statutory language that does not use the word "right."[4]

Of course, Congress sometimes uses the word "right" when creating new property rights, as OpenAI points out.  *See* Appellee Br. at 28.  But it also creates rights without using that language.  For example, in 15 U.S.C. § 1125(a)(1), Congress imposed trademark "liab[ility]" for using in commerce terms that create a false designation of origin.  That section grants "property rights under the Lanham Act."  *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 966 (10th Cir. 1996).  Or, to take another example, 29 U.S.C. § 207(a)(1), which says that no employer "shall employ any of his employees," for more than 40 hours without paying time-and-a-half, creates a "right to overtime pay."  *Mei Xing Yu v.*

---

[4] To be clear, the Senate and House Reports discuss "rights" in connection with section 1201 of the DMCA, not section 1202—the latter of which is at issue here. But the fundamental point remains: that the DMCA's legislators did not find it necessary to include the word "right" in a statute that grants rights.

- 10 -

*Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019). So while section 1202(b) does not use the word "right," that fact does not move the needle.

**Third**, OpenAI argues that the DMCA's provisions regarding boat-hull designs undermine the notion that section 1202(b) granted rights. Appellee Br. at 30. That section defines certain exclusive rights in such designs and specifies certain ways those rights may be infringed. *See* 17 U.S.C. §§ 1308, 1309. But as argued above, "infringe" is a term of art under the Copyright Act that refers to only certain types of rights violations. And as also argued above, both the Senate and House Reports saw the DMCA as creating rights, including where the statute does not expressly use rights-creating language.

**Fourth**, OpenAI argues that CMI removal does not interfere with a property right because copyrights are held in the work itself, not the material objects in which they are embodied, whereas CMI removal requires an interaction with the copy. Appellee Br. at 38. But interacting with a copy is an indispensable element of traditional copyright infringement too. For instance, violating the distribution right requires one to distribute "copies" of the work—*i.e.*, the material objects. 17 U.S.C. § 106(3). Violation of the reproduction right turns on "[a]ctual copying," which requires the defendant to have accessed an embodied copy. *Repp v. Webber*, 132

- 11 -

F.3d 882, 889 (2d Cir. 1997).[5] So too for other exclusive rights under section 106. Of course, CMI removal does not involve these exact rights. But OpenAI goes too far in concluding that the DMCA grants no property rights at all. Again, this Court held that they do. *See Mango*, 970 F.3d at 172 n.2.

*Fifth*, OpenAI attempts to minimize the analogy between CMI removal and copyright infringement by pointing to a supposed difference between the relevant remedial statutes: 17 U.S.C. § 504 for copyright infringement, and 17 U.S.C. § 1203 for CMI removal. *See* Appellee Br. at 32-33. It does not dispute that the two give plaintiffs an identical menu of remedial options—they can recover either actual damages plus profits on the one hand, or statutory damages on the other—which Appellants cited as evidence of the similarity between the two. *See* Appellant Br. at 26.[6] But it argues that Congress imposed an "additional-injury" requirement for DMCA remedies that does not exist for copyright infringement, which, it says, attenuates the comparison. Appellee Br. at 32.

---

[5] Proof of access is excused if the copies are "strikingly similar." But the striking similarity doctrine is merely a stand-in for evidence of access, since by definition striking similarity "preclude[s] the possibility of independent creation," which leaves only actual copying—hence access to a copy of the work—as an explanation for the similarity. *See Repp*, 132 F.3d at 889.

[6] Page 26 of Appellants' opening brief contains a typographical error. When discussing remedies, it cites to 17 U.S.C. § 1202(c)(1). It should have cited to 17 U.S.C. § 1203(c)(1).

OpenAI cites no case holding that an "injury" under section 1203 requires more than a violation of the statute. And it has no answer to this Court's construction of section 1203 as simply "creat[ing] civil remedies," *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001), or the First Circuit's understanding that section 1203 requires nothing beyond Article III, *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 107 n.7 (1st Cir. 2008). *See* Appellant Br. at 44-45 (discussing these cases). Instead, the fact that Congress allowed for statutory damages **without** a showing of actual damages or profits strongly signals its judgment that CMI removal itself works an injury. After all, it allowed for exactly the same recovery for copyright infringement, which OpenAI concedes is intrinsically injurious. Appellee Br. at 32.

In sum, the DMCA grants a right against CMI removal that is closely analogous to copyright infringement. That suffices to confer standing.

### 2. Appellants have standing due to their harmed incentives to create.

In their opening brief, Appellants argued that CMI removal (done with the required *scienter*) and copyright infringement work similar harms because they both harm the incentive to create. *See* Appellant Br. at 23-26. OpenAI disputes that these harms to creative incentives confers standing. Each of its five arguments is wrong.

***First***, OpenAI argues that CMI removal is not a concrete injury because the only injury from copyright infringement is the invasion of a property right, which CMI removal does not involve. *See* Appellee Br. at 33. That is incorrect for reasons

- 13 -

argued above; CMI removal does violate property rights. But even if it didn't, OpenAI's argument would still fail. And that is because copyright infringement is harmful in two ways: it both violates a property right *and* harms creative incentives.

*Second*, OpenAI argues that harm to the incentive to create is not a concrete Article III injury; according to OpenAI, that would conflate the purpose of copyright law—incentivizing creation—with the injury caused by copyright infringement: the invasion of a property right. *See* Appellee Br. at 33-34. But OpenAI cites no authority to decouple the two. And its approach makes no sense. The purpose of a law will typically, if not always, map onto the injury against which it protects. Of course, the overlap may not be perfect, and in outlier cases the statute may create a cause of action that extends more broadly than that interest—*TransUnion* being an example, where Congress did more than necessary to protect the reputations of people with false information in their credit files. But the possible existence of edge cases, such as a copyright infringement that happens to boost creative incentives due to downstream consequences, *see* Appellee Br. at 36, does not negate the general proposition that a person whose copyright is infringed suffers a harmed incentive to create. And neither does OpenAI argue that this case is such an outlier.

*Third*, OpenAI argues that "the specter of reduced creation is too speculative to be concrete" if a DMCA plaintiff could bring suit merely "because someone once removed CMI from her existing work without actually infringing her copyright."

- 14 -

Appellee Br. at 36. But that argument ignores the second *scienter* element, which requires the plaintiff to prove that the CMI removal would likely conceal or abet an infringement. *See* 17 U.S.C. § 1202(b)(1). In other words, the cause of action **requires** an infringement that is at least likely. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) (holding that DMCA requires a likely infringement). As *Intercept* explains, this element "ensures that any violation of the DMCA is tied to concerns of downstream infringement." *Intercept*, 767 F. Supp. 3d at 28. Thus, this case is nothing like *Clapper*, where the plaintiffs lacked standing to challenge a government policy "that does not regulate, constrain, or compel any action on their part." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013). If a plaintiff satisfies the second *scienter* element—which OpenAI does not, on appeal, dispute Appellants have plausibly alleged—then the specter of infringement is by definition not speculative.[7]

**Fourth**, OpenAI argues that the harm to creative incentives is insufficiently particularized to the plaintiff because those diminished incentives also harm the public. *See* Appellee Br. at 37. But the plaintiff plainly suffers a unique harm as the person whose creative incentives have been adversely affected.

---

[7] This shows the inaptness of OpenAI's Harry Potter hypothetical, where a reader—presumably a wannabe Slytherin who never got their Hogwarts letter—removes the book cover to make the book lighter to carry. *See* Appellee Br. at 23. That reader has not violated the DMCA because there is no infringement to abet or conceal. For the same reason, J.K. Rowling suffers no diminished creative incentives.

*Fifth*, OpenAI argues that the increased risk of future infringement resulting from CMI removal does not confer standing to sue for damages. *See* Appellee Br. at 41-42. True. But Appellants have not argued otherwise. A risk of future harm— here, the likely prospect of future infringement—can confer standing for damages if it "causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). And here, the separate concrete harm is the harm to creative incentives, which is felt immediately upon the removal of CMI when done with *scienter*.

### C.  Appellants also have standing from OpenAI's unjust enrichment.

Even leaving aside the foregoing, Appellants' third and final standing theory independently suffices. Separate and apart from copyright infringement, Appellants have standing because they suffered an injury similar to unjust enrichment. The crux of the issue is whether the historical injury of unjust enrichment requires the plaintiff to suffer a measurable loss on top of the defendant's unlawful gain. OpenAI says yes. But it does so only by wrongly summarizing historical unjust enrichment law, mischaracterizing modern standing precedents, and improperly construing Appellants' allegations.[8]

---

[8] OpenAI also cites its mistaken view of the DMCA's "injury" requirement to argue that the DMCA does not protect against an unjust-enrichment-type remedy. In OpenAI's' view, the statute only allows recovery of profits after actual damages have been established. Appellee Br. at 50-51. But that argument fails too. The statute allows the recovery of any profits that are not taken into account when computing actual damages—which, if there are zero actual damages, would simply be all the defendant's profits. 17 U.S.C. § 1203(c)(2). The evident purpose of this

### 1. Historically, unjust enrichment required only an unlawful profit.

The parties agree that unjust enrichment follows from "equitable first principles." Appellee Br. at 46. But OpenAI unduly cabins that principle. The principle, simply put, is that "it would be inequitable that he should make a profit out of his own wrong." *Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189, 207 (1881). And what makes a profit "inequitable" could historically turn on the violation of a statute—in *Root*, for example, on the violation of the Patent Act. *See id*. Reinforcing courts' jurisdiction to hear such claims absent a measurable loss is *Root*'s specific holding: that federal courts had equity jurisdiction over suits to recover profits made from a patent law violation when circumstances "disable the patentee from a recovery at law altogether," which would, presumably, include the absence of a measurable loss and thus the ability to show legal damages. *Id*. at 216; *see Pierpont v. Fowle*, 19 F. Cas. 652, 657 (C.C.D. Mass. 1846) (Woodbury, J.) (holding that equity jurisdiction for copyright infringement exists when an equitable accounting is "better than damages, which alone can be had at law"). *See also, e.g.*, *Dean v. Mason*, 61 U.S. 198, 203 (1857) (holding that in equity the rule is to provide an account for profits, which "takes away the motive of the infringer"); *Liu v. SEC*,

---

section is to avoid double-counting, which is how courts have interpreted the analogous provision in 17 U.S.C. § 504(b). *See Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985).

591 U.S. 71, 81 (2020) (discussing history of disgorgement remedy). So too here. OpenAI unjustly enriched itself by profiting from its violation of the DMCA by removing CMI as it created training sets for its billion-dollars-a-month chatbot.

Ignoring this history, OpenAI wrongly transforms one application of this equitable principle into a general rule. On its view, a defendant's profit can be inequitable in just one way: if it causes a plaintiff's loss. And it cites historical authorities that involved an unjust gain accompanied by a loss. Appellee Br. at 45-46.[9] But its examples of one possible unjust enrichment scenario merely show that a plaintiff's loss is **sufficient** for the profit to be inequitable. They do not hold that such a loss is **necessary**.

Only two of OpenAI's historical authorities purport to go further. One is an 1893 treatise that claims that unjust enrichment involves "not only a plus, but a minus quantity." Wiliam A. Keener, A Treatise on the Law of Quasi-Contracts, 163 (1893). To reach that conclusion, Mr. Keener cited only a single English case, *Phillips v. Homfray*, 24 Ch. D. 439 (1883). Mr. Keener's opinion soon drew criticism by at least one American court for being "illogical in its limitation." *Fed.*

---

[9] One of OpenAI's examples does not even address a **defendant's** alleged unjust enrichment at the plaintiff's expense, but a court declining to grant a remedy that would unfairly enrich the **plaintiff**. *See Pickens' Ex'rs v. Walker's Heirs*, 33 Ky. 167, 169 (1835) (declining to enforce plaintiff's right of redeem slaves under a mortgage because plaintiff had delayed over twenty years and the slaves' value had increased, which would "be unjustly to enrich one party at the expense of the other")). *Pickens* is inapt.

*Sugar Ref. Co. v. U.S. Sugar Equalization Bd*., 268 F. 575, 582 (S.D.N.Y. 1920). In American law, "[t]he point is not whether a definite something was taken away from plaintiff and added to the treasury of defendant," but "whether defendant unjustly enriched itself by doing a wrong to plaintiff." *Id*.; *see also Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 344 & n.18 (Del. Ch. 2022) (holding, notwithstanding Mr. Keener's treatise, that awarding restitution absent a "measurable loss" is "consistent with the principles underlying the concept of unjust enrichment"). OpenAI's other historical case, *Rijeski v. Weiland*, 21 Pa. D. 313, 314-15 (Pa. Com. Pl. 1910), relied primarily on Mr. Keener's treatise, and is the only case that appears to have done so. Thus, the weight of historical authority on this point is squarely against OpenAI.

OpenAI also cites the First Restatement of Restitution for the proposition that a person must be "unjustly enriched at the expense of another." Restatement (First) of Restitution § 1 (1938) ("First Restatement"). It seizes on the word "expense," arguing that an expense means some kind of measurable loss. *See* Appellee Br. at 47. But it is forced to admit, *see id*, that this interpretation is explicitly disavowed by the First Restatement, which notes that the defendant "may be under a duty to give to the plaintiff the amount by which he has been enriched" even when "the plaintiff has not suffered a corresponding loss or, in some cases, any loss." First Restatement § 1 cmt. e.

- 19 -

OpenAI tries to limit this principle to violations of fiduciary duties, which the Restatement gives as a non-exhaustive example. *See* Appellee Br. at 47. But that argument runs headlong into *Root*, which explicitly holds the opposite. 105 U.S. at 214 (holding that a wrongdoer's duty to account for profits is not "based upon the idea that there is a fiduciary relation created between [the patentee] and the wrong-doer by the fact of infringement"); *see also Liu*, 591 U.S. at 81 (holding that "equity courts did not limit [the disgorgement] remedy to cases involving a breach of trust or of fiduciary duty"); *Rose v. PSA Airlines, Inc.*, 80 F.4th 488 (4th Cir. 2023) (holding that under the First Restatement, the plaintiff's harm "did not have to be a tangible loss" and could instead "be a wrongful interference with the plaintiff's' rights").

The flaws with OpenAI's argument are brought into sharper relief by the Third Restatement, which clarifies that the term "expense of another" includes "in violation of the other's legally protected rights," Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (2011) ("Third Restatement"), such as those originating from statutes, *id*. §§ 42, 44 cmt a. OpenAI's main response is to discredit the Third Restatement as ahistorical, citing Justice Scalia's solo opinion in *Kansas v. Nebraska*, 574 U.S. 445 (2015). *See* Appellee Br. at 52. Justice Thomas made the same argument in *Liu*. *See* 591 U.S. at 97 (Thomas, J., dissenting) (citing Justice Scalia's opinion). But all eight of his colleagues disagreed, relying on the Third

- 20 -

Restatement as correctly articulating the "foundational principle" of unjust enrichment that animated *Root* and other early cases. *Id*. at 79 (majority op.). The Third Restatement's "statutory rights" proposition hews closely to *Root*, which discussed profits made in violation of a statute.[10]

At bottom, regardless of whether profit-plus-loss is the "paradigm case of unjust enrichment," Appellee Br. at 51, Article III is not limited to paradigm cases of historical injuries. It grants federal courts jurisdiction to adjudicate ***all*** claims of harm similar to those "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 433. As a historical matter, parties could sue to recover profits made by another in violation of a statute. That is this case.

### 2.     Modern standing law supports the same result.

As Appellants argued, this Court reached a similar conclusion in *Packer on behalf of 1-800-Flowers.Com, Inc. v. Raging Capital Management*, LLC, 105 F.4th

---

[10] OpenAI cites modern unjust-enrichment cases that, it says, require a loss on top of a gain. Some in fact do not. In *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176-77 (2d Cir. 2012), the Court construed New York unjust-enrichment law to require a benefit "at the plaintiff's expense," which, as we have seen, typically includes in violation of a duty owed to the plaintiff. And in *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 86-87 (2d Cir. 2021) the Court merely held that unjust enrichment via a "money had and received" theory requires that the money at issue belong to the plaintiff. Regardless, the question is not whether a handful of modern jurisdictions now require a measurable loss, but whether federal courts historically could hear such claims. *See TransUnion*, 594 U.S. at 424.

46 (2d Cir. 2024), which upheld a plaintiff's standing to seek disgorgement of a defendant's short-swing profits under the Securities and Exchange Act irrespective of any loss by the plaintiff. The Court, of course, drew an analogy to breach of fiduciary duty, not expressly to unjust enrichment. But as Appellants also argued, and as OpenAI does not appear to dispute, unjust enrichment is, by definition, the harm flowing from a fiduciary duty breach. *See* Appellant Br. at 35-36; Appellee Br. at 52-53. True, a defendant can unjustly enrich itself in other ways. *See* Appellee Br. at 53. But that does not change that a fiduciary duty breach is one of them. Stepping back, moreover, the defendant in *Packer* in fact enriched itself in violation of a statute, which, as argued above, is one instance of unjust enrichment. And while the fiduciary relationship is no doubt core to a breach-of-fiduciary-duty claim, *see* Appellee Br. at 53, a fiduciary relationship has never been necessary for a plaintiff to recover profits made in violation of a legal duty. A fiduciary relationship is only one fount of such a legal duty. Another is a duly enacted statute. *See Root*, 105 U.S. at 207; *Liu*, 591 U.S. at 81.

In response, OpenAI wrongly relies on the dissents in two Supreme Court cases. The first is *Thole v. U.S. Bank N.A*, 590 U.S. 538 (2020), which considered whether participants in an ERISA defined-benefit plan had standing to sue for plan mismanagement. The dissent would have held that they did because, in its view, plan beneficiaries were similarly situated to beneficiaries of a private trust to whom

- 22 -

the fiduciaries owed duties of loyalty and prudence, violation of which would have been actionable as unjust enrichment. *See id*. at 558-59 (Sotomayor, J., dissenting). The majority did not address—let alone dispute—the proposition that unjust enrichment is complete upon a defendant's unlawful gain. Its holding turned on an entirely different ground: that due to the specific nature of ERISA defined-benefit plans, such a plan's participants "possess no equitable or property interest in the plan." *Id*. at 543 (majority op.). Thus, as Justice Thomas clarified in concurrence, a plan's fiduciaries owe duties "to the plan," not its participants. *Id*. at 548 (Thomas, J., concurring). And because the participants were owed no duties, they lacked a stake in the case. Here, in contrast, there is no question that OpenAI owes Appellants duties under the DMCA: duties not to remove their CMI with *scienter*.

OpenAI also cites the *TransUnion* dissent, which noted that TransUnion "violated consumers' rights in order to create and sell a product to its clients" and thus "may well be in a position to keep its ill-gotten gains." *TransUnion*, 594 U.S. at 459. Though the *TransUnion* majority says nothing about unjust enrichment,[11] OpenAI extrapolates that it rejected the proposition that unjust enrichment requires only a defendant's unlawful profit. *See* Appellee Br. at 49. But that is just not true—

---

[11] Neither did the Ninth Circuit. *See generally Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Nor did the respondent in that case. *See generally* Brief for Respondent, *TransUnion LLC v. Ramirez*, No. 20-297 (S. Ct. Mar. 3, 2021). Because the issue was not presented, it was no surprise the Court did not address it.

not even by implication. Neither opinion suggested that TransUnion profited from maintaining false credit files that it did *not* sell to its customers: the ones that did not ground standing. *TransUnion*, 594 U.S. at 434. Nor would that make any sense. And because TransUnion did not profit from those violations, the case does not implicitly hold that those (non-existent) profits failed to satisfy Article III.

The same point dispels OpenAI's slippery-slope argument: that there would almost always be standing in statutory-violation cases, since "[r]egulated parties rarely violate statutes for no reason; they do so to gain an advantage." Appellee Br. at 49. *TransUnion* itself is a counterexample. More generally, OpenAI's cynical argument about the ethics of the large corporate entities that are often defendants in these kinds of statutory cases is hardly something this Court should encourage or facilitate. Nor should it be troubling for courts to honor most of Congress's decisions about which wrongs to right. In any event, *TransUnion*'s aim was not to close the courthouse doors to large numbers of statutory-violation plaintiffs, but to ensure that such plaintiffs have a "personal stake" in the outcome consistent with historical practice. *TransUnion*, 594 U.S. at 423. And as shown above, plaintiffs have historically had such a stake when a defendant unlawfully profits from violating legal duties owed to them.

- 24 -

### 3. Appellants plausibly alleged OpenAI's unlawful profits.

Last, OpenAI argues that Appellants' profit-based allegations are too conclusory. *See* Appellee Br. at 50. Not so. Appellants specifically (and plausibly) alleged that removing CMI led OpenAI to save expenses it otherwise would have incurred training its models. In particular, had OpenAI left CMI in the training data, ChatGPT would have learned to emit CMI in linguistically inappropriate circumstances, and OpenAI would have had to retrain its models to avoid that result, which would have been more expensive than removing the CMI in the first place. J.A.121.[12]

OpenAI faults Appellants for not specifying in the complaint "the degree of computational resources saved" or explaining "how that would actually translate to cost savings for OpenAI." Appellee Br. at 50. But that argument grasps at straws. OpenAI cites no case depriving an unjust-enrichment plaintiff of standing for not alleging the specific amount by which the defendant was enriched, particularly as a matter of pleading. The precise amount of an unjust enrichment is information typically (and here) uniquely in Defendants' control, and as such is a classic discovery question; indeed, "enrichment" need not even be quantifiable at all. *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 927 (E.D. Pa. 2012)

---

[12] Appellants argued in their opening brief that saved expenses qualify as unjust enrichment, which OpenAI does not dispute. Appellant Br. at 33-34; *see also, e.g.*, *Tilghman v. Proctor*, 125 U.S. 136, 147 (1888).

(noting that unjust enrichment includes "any form of advantage"). And Appellants *have* explained how removing CMI would translate to cost savings. Because removing CMI is less expensive than retraining the model to avoid the linguistic problems that would have resulted, CMI removal caused OpenAI to save expenditures. J.A.121. The exact amount is irrelevant for standing. The point is that there are some, which suffices to ground standing under unjust enrichment.

In sum, separate and apart from copyright infringement, Appellants were injured by OpenAI's unjustly-enriching removal of their CMI.

### D. The district court wrongly denied jurisdictional discovery.

If standing did require dissemination, as OpenAI argues, the district court should have allowed Appellants to take discovery into the extent to which ChatGPT disseminated its articles. Sometimes parties need discovery of jurisdictional facts, and courts should give them "ample opportunity" for that discovery. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011); *see also Inv. Props. Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707-08 (2d Cir. 1972). Here, Appellants merely seek the same discovery that OpenAI agreed to conduct in this case and is currently conducting in all the other news-related cases in this multidistrict litigation:

review of OpenAI's output logs to determine if ChatGPT disseminated their articles.[13]

OpenAI adds nothing to the district court's flawed basis for denying Appellants this discovery. The district court speculated that it "seems remote" that ChatGPT would plagiarize Appellants' articles, citing only its understanding that "ChatGPT synthesizes the relevant information in its repository into an answer." J.A.211. But this completely ignores the well-known phenomenon of regurgitation, where large language models *do* plagiarize material from their training data. J.A.103; J.A.108; J.A.113-115. It also ignores OpenAI's post-litigation efforts to suppress regurgitation of news articles, which would have been unnecessary if those regurgitations were unlikely prior to this lawsuit. J.A.115. And while any single ChatGPT output probably does not plagiarize one of Appellants' articles, ChatGPT emits *billions* of responses *each day*, such that at least some plagiarism is entirely plausible. Appellee Br. at 55 n.3. Thus, if standing did require dissemination, which

---

[13] Certain aspects of that discovery remain contested. Most recently, the parties have disputed whether plaintiffs should have access to all or only a subset of OpenAI's sample of 20 million anonymized conversations. The magistrate judge sided with the plaintiffs, and OpenAI has objected under Fed. R. Civ. P. 72. *See* Order, *In re OpenAI, Inc., Copyright Infringement Litigation*, No. 25-md-3143 (Nov. 7, 2025), ECF No. 734; Memorandum of Law, *In re OpenAI, Inc., Copyright Infringement Litigation*, No. 25-md-3143 (Nov. 24, 2025), ECF No. 841. But OpenAI has never refused to provide this discovery.

it does not, the district court should have allowed Appellants the opportunity to find it.

## III.    CONCLUSION

The Court should reverse the dismissal of the complaint for lack of standing and denial of amendment on grounds of futility, and remand for further proceedings. If it finds no standing, it should reverse the denial of jurisdictional discovery.

Dated: December 8, 2025                    Respectfully submitted,

*/s/ Stephen Stich Match*
Stephen Stich Match
  *Counsel of Record*
Matthew V. Topic
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Phone: (312) 243-5900
Facsimile: (312) 243-5902
Email: match@loevy.com
matt@loevy.com
ai@loevy.com
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing brief complies with the requirements of Fed. R. App. P. 32 and Second Circuit Local Rule 32.1 because it uses a proportionally-spaced font, has a typeface of 14 points or more, and contains 6,831 word, excluding those portions of the brief exempted by Fed. R. App. P. 32(f), as determined by the word-count function of Microsoft Word.

Dated: December 8, 2025

*/s/ Stephen Stich Match*
Stephen Stich Match
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on December 8, 2025, I electronically filed the foregoing brief on ECF and that counsel for Appellees were served via that electronic filing.

Dated: December 8, 2025

*/s/ Stephen Stich Match*
Stephen Stich Match
*Counsel for Plaintiffs-Appellants*